## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation; Craftwood II, Inc., a California corporation, dba Bay Hardware; and Craftwood III, Inc., a California corporation, dba Lunada Bay Hardware, individually and as representatives of all others similarly situated, | Case No. **17 CH 1213** |
| Plaintiffs, | **Jury Trial Demanded** |
| v. | |
| Horizon Global Corporation, a Delaware corporation, dba Reese and dba Harper; Horizon Global Americas, Inc., a Delaware Corporation, f/k/a Cequent Performance Products, Inc., a Delaware corporation and successor by merger with Cequent Consumer Products, Inc., an Ohio corporation, dba Reese and dba Harper; Comprehensive Marketing, Inc., an Illinois corporation; |  AUG 3 1 2017 Erin Cartwright Weinstein CIRCUIT CLERK |
| Defendants. | |

**Complaint for Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and FCC Regulations [Class Action] and for Declaratory Relief; Exhibits**

Plaintiffs Craftwood Lumber Company ("Craftwood"), Craftwood II, Inc., dba Bay Hardware ("Bay Hardware"), and Craftwood III, Inc., dba Lunada Bay Hardware ("Lunada Bay") (collectively, "Plaintiffs"), bring this action on behalf of themselves and all other similarly situated parties, and allege:

## Introduction

1.      More than two decades ago the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, was enacted into law.  The law responded to countless complaints by American consumers and businesses about the cost, disruption, and nuisance imposed by junk faxes.  The law prohibited the transmission of facsimile advertising without the prior express invitation or permission of the recipient.  In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005.[1]  As amended, the law requires a sender to include in its faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future faxes and explains how to exercise that right.

2.      Plaintiffs bring this class action to recover damages for and enjoin repeated junk faxing by Defendants in direct violation of the TCPA and the regulations

---

[1]      Unless otherwise noted, all statutory references are to this statute in effect since 2005.

promulgated by the Federal Communications Commission. Within four years preceding the filing of this Complaint, Defendants have sent junk faxes to Plaintiffs, including, but not limited to, the facsimile transmission of advertisements to Craftwood's telephone facsimile number on July 19, 2016, and May 4, 2017, true and correct copies of which are attached hereto as Exhibits 1 and 2; facsimile advertisements to Bay Hardware's telephone facsimile number on July 19, 2016, November 9, 2016, November 16, 2016, November 30, 2016, and May 4, 2017, true and correct copies of which are attached hereto as Exhibits 3 through 7; and facsimile advertisements to Lunada Bay's telephone facsimile number on November 9, 2016, November 16, 2016, November 30, 2016, and May 4, 2017, true and correct copies of which are attached hereto as Exhibits 8 through 11.

## Standing and Jurisdiction

3.     This Court has subject matter jurisdiction over this matter and Plaintiffs have standing to seek relief in this Court because 47 U.S.C. § 227 (b)(3) authorizes commencement of a private action in an appropriate state court to obtain damages for Defendants' violations of the TCPA and/or FCC regulations, to obtain injunctive relief, or for both such actions. Plaintiffs are informed and believe, and upon such information and belief allege, that Defendants transmitted the faxes that are the subject of this lawsuit without obtaining recipients' prior express invitation or permission in direct violation of the TCPA and FCC regulations.

4.      Plaintiffs sustained concrete and actual injury as a result of Defendants'
actions and omissions because Defendants' junk faxes, among other things, wrongfully
occupied Plaintiffs' facsimile telephone lines; caused Plaintiffs' fax lines to be
unavailable for legitimate business use; wasted time required to manage and dispose of
Defendants' junk faxes; consumed and wasted Plaintiffs' electricity, paper, and toner;
invaded Plaintiffs' privacy rights; and violated Plaintiffs' interests in seclusion.  Plaintiffs
did not give Defendants prior express permission invitation or permission to send fax
advertisements, including, but not limited to Exhibits 1 through 11 to this Complaint.

5.      This Court has personal jurisdiction over Defendants because they, either
directly or through agents as described in paragraphs 20 and 35, regularly conduct
business within the state of Illinois, intentionally transmitted the unsolicited facsimile
advertisements that are the subject of this action from the state of Illinois, intentionally
directed the unsolicited facsimile advertisements the subject of this action to recipients
within the state of Illinois, and Defendants committed at least some of their violations of
the TCPA and FCC regulations within the state of Illinois.

**The Parties**

6.      **Individual Plaintiffs/Class Representatives**.  Plaintiff Craftwood Lumber
Company is, and at all times relevant hereto was, a corporation duly organized and
existing under the laws of the state of Illinois, with its principal place of business in

Highland Park, Illinois. Craftwood is, and at all times relevant hereto was, the subscriber of the facsimile telephone number ((847) 831-2805) to which Defendants sent junk faxes, including, but not limited to, the fax attached as Exhibits 1 and 2 to this Complaint.

7.      Plaintiff Craftwood II, Inc., is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of California, doing business as Bay Hardware, with its principal place of business in Seal Beach, California. Bay Hardware is, and at all times relevant hereto was, the subscriber of the facsimile telephone number ((562) 594-4054) to which Defendants sent junk faxes, including, but not limited to, the fax attached as Exhibits 3 through 7 to this Complaint.

8.      Plaintiff Craftwood III, Inc., is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of California, doing business as Lunada Bay Hardware, with its principal place of business in Palos Verdes Estates, California. Lunada Bay is, and at all times relevant hereto was, the subscriber of the facsimile telephone number ((310) 377-5827) to which Defendants sent junk faxes, including, but not limited to, the faxes attached as Exhibits 8 through 11 to this Complaint.

9.      **Defendant Horizon Global Corporation**. Defendant Horizon Global Corporation dba Reese and dba Harper ("HGC"), is a corporation organized and existing under the laws of the state of Delaware, and having its principal place of business in

Troy, Michigan. At all relevant times, Horizon Global has been a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1).

10.     **Defendant Horizon Global Americas**. Defendant Horizon Global Americas Inc., (f/k/a Cequent Performance Products, Inc., a Delaware corporation and successor by merger with Cequent Consumer Products, Inc., an Ohio corporation) dba Reese and dba Harper ("HGA"), is a corporation organized and existing under the laws of the state of Delaware, and having its principal place of business in Plymouth, Michigan. At all relevant times, Horizon Global has been a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1).

11.     **Defendant CMI**. Defendant Comprehensive Marketing, Inc. ("CMI"), is a corporation organized and existing under the laws of the state of Illinois, and having its principal place of business in Lombard, Illinois. At all relevant times, CMI has been a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1). HGC, HGA, and CMI are collectively referred to herein as "Defendants."

### The TCPA's Prohibition Against Junk Faxing

12.     By the early 1990s advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance, and cost on the recipients. Among other things, junk

faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate fax communications from junk advertisements and to discard the latter.

13.     Congress responded to the problem by passing the TCPA in 1991. The law was enacted to eradicate junk faxes and stanch "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317 (1991). It sought to accomplish this objective by prohibiting advertisers from transmitting facsimile advertisements without first obtaining prior express invitation or permission from the recipient.

14.     The original law did not achieve its objectives, however. In the decade following the TCPA's enactment, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop.[2] Congress responded by strengthening the law through the JFPA. This 2005 amendment for the first time required advertisers to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements").[3] To comply with these requirements, an advertiser must include a clear and conspicuous

---

[2]     FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003).

[3]     *See* 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

notice at the top or bottom of the first page of the advertisement, separate from the advertising copy and any other disclosures, that informs recipients of their right to stop future junk faxes and of the legal requirements for an effective opt-out request. The notice must be distinguishable from the advertising copy by use of bolding, italics, and different font.

## Horizon Global and CMI's Illegal Junk Fax Program

15.     HGC groups its operating segments into reportable segments by the region in which sales and manufacturing efforts are focused. HGC's reportable segment in the Americas is HGA. HGC and HGA are collectively referred to herein as "Horizon Global." Horizon Global is a designer, manufacturer and distributor of a wide variety of towing, trailering, cargo management, and other related accessory products on a global basis, serving the automotive aftermarket, retail and original equipment channels. In connection with its Reese and Reese Secure brands, Horizon Global manufactures and sells tie downs to secure and protect cargo for travel. In connection with its Harper brand, Horizon Global manufactures and sells cleaning tools, including brooms, brushes, mops, buckets, dustpans, and squeegees.

16.     Plaintiffs are informed and believe, and upon such information and belief aver, that HGA (f/k/a Cequent Performance Products, Inc.) is the registrant of the trademark "Reese." The Reese Brands website (www.reesebrands.com) states,

"REESE® Brands, the REESE® logo and REESE® graphics are the service marks, trademarks or registered trademarks owned by Horizon Global Corporation."

17.    CMI styles itself a "full service manufacturer's representative."  On information and belief, within the past four years CMI has served as Horizon Global's authorized marketing agent to promote the sale of Horizon Global's products marketed under the Reese and Reese Secure brands.  Horizon Global and CMI, working within the course and scope of their joint marketing arrangement, have adopted and implemented an illegal junk fax advertising program to promote the sale of Horizon Global's property, goods and services offered under the Reese, Reese Secure, and Harper brands.  All faxes that are the subject of this lawsuit were designed as, intended as, and constituted advertisements under the TCPA within their four corners and as part of Defendants' overall, promotion, and sale of Defendants' property, goods, and services.  These illegal junk faxes include, but are not limited to, Exhibits 1 through 9 to this Complaint.

18.    Plaintiffs are informed and believe, and upon such information and belief allege, that Defendants transmitted their junk faxes without obtaining recipients' prior express invitation or permission, in direct violation of the TCPA and FCC regulations.

19.    Defendants' violations of the TCPA and/or FCC regulations were "willful" and/or "knowing" as used in § 227(b)(3) because, among other things, Defendants fully intended their acts; the companies' repeated transmission of fax advertisements was no

mistake or accident.

20.     Plaintiffs are informed and believe, and upon such information and belief allege, that all Defendants approved, authorized and/or participated in the formulation, preparation and sending of the fax advertisements; received and retained the benefits of the fax advertisements in the form of revenue, name/brand recognition and promotion; and had actual notice of the unlawful activity constituting the violations herein and failed to take steps to prevent the same.

21.     **Private Right of Action**.  Under section (b)(3) of the TCPA, Plaintiffs have a private right of action to bring this action on behalf of themselves and on behalf of the Plaintiff Class to redress Defendants' violations of the Act and the FCC regulations.

## Class Action Allegations

22.     **Statutory Reference**. This action is properly maintainable as a class action under authority of Code of Civil Procedure section 2-801 because: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members; (c) the representative parties will fairly and adequately protect the interest of the class; and (d) a class action is an appropriate method for the fair and efficient adjudication of the controversy.

23. **Class Definition**. The Plaintiff Class consists of all persons and entities that were subscribers of facsimile telephone numbers to which material that advertised the commercial availability or quality of Horizon Global property, goods, or services was sent via facsimile transmission on and after June 8, 2013, including, without limitation, the faxes attached as Exhibits 1 through 11 to this Complaint. Plaintiffs reserve the right to amend the class definition after completion of class certification discovery.[4]

24. **Class Size**. Plaintiffs are informed and believe, and based and upon such information and belief allege, that the Plaintiff Class numbers in the thousands and is therefore sufficiently numerous that the joinder of all members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with litigation on an individual basis.

25. **Typicality**. Plaintiffs' claims are typical of those held by the Plaintiff Class because they share the same essential characteristics. Among other things, Plaintiffs and members of the class were sent the same type of unsolicited junk fax

---

[4] Excluded from the Plaintiff Class are officers, directors, and employees of any Defendant or any affiliated company; legal representatives, attorneys, heirs, successors or assigns of any Defendant, Defendants' officers and directors, or of any affiliated company; parent and subsidiary companies of either Defendant; any entity in which any of the foregoing persons have or have had a controlling interest; any members of the immediate families or the foregoing persons; any federal, state and/or local governments, governmental agencies, including the Federal Communications Commission; and attorneys of record in this action and their immediate family members.

communications; all parties have the same claims under the TCPA and FCC regulations; and all parties are entitled to the same statutory damages and injunctive relief. In sum, Plaintiffs' claims arise from the same course of conduct that gives rise to the claims of the Plaintiff Class, and Plaintiffs' claims are based on the same legal theories.

26.     **Adequacy of Representation**. The Plaintiff Class will be well represented by Plaintiffs and their counsel. Plaintiffs appreciate the responsibilities of a class representative and understand the nature and significance of the claims made in this case. Plaintiffs can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between their interests and the interests of other class members. Plaintiffs' counsel have the necessary resources, experience and ability to prosecute this case on a class action basis. Plaintiffs' attorneys have extensive experience representing consumers and other clients in complex business disputes, have significant experience as class counsel in federal and state courts, and have significant experience prosecuting class actions for TCPA violations.

27.     **Impracticability of Joinder**. Joinder of all Plaintiff Class members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each class member, in comparison to the time and costs associated with joinder in the litigation on an individual basis.

28.    **Common Questions of Law and Fact Are Predominant**. Numerous
common questions of law and fact may be jointly tried and would not require each
member individually to litigate numerous and substantial questions to determine his or
her right to recover following the class judgment.

A.    **Common Questions of Fact**. This case presents numerous
questions of fact that are common to all class members' claims. The case arises out of a
common nucleus of fact and standardized conduct by Defendants because, among other
things: (1) the same type of faxes; (2) were transmitted by the same senders, in the same
manner and from the same facsimile telephone number; (3) in violation of the same
statute(s) and FCC regulations in the same manner; and (4) entitling class members to
receive the same statutory damages and injunctive relief.

B.    **Common Questions of Law**. The case presents numerous common
questions of law, including, but not limited to:

(1)    whether the faxes that are the subject of this lawsuit are
advertisements within the ambit of the TCPA and the FCC regulations;

(2)    whether Defendants sent unsolicited facsimile advertisements in
violation of 47 U.S.C. § 227(b)(1)(C);

(3)    whether HGC is directly liable for the sending of the illegal junk fax

advertisements;

(4)     whether HGC is vicariously liable for the sending of the illegal junk fax advertisements;

(5)     whether HGA is directly liable for the sending of the illegal junk fax advertisements;

(6)     whether HGA is vicariously liable for the sending of the illegal junk fax advertisements;

(7)     what constitutes a willful or knowing violation of the TCPA within the meaning of 47 U.S.C. § 227(b)(3);

(8)     whether Defendants committed willful and/or knowing violations of the TCPA and/or the FCC's regulations;

(9)     whether damages should be increased on account of Defendants' willful and/or knowing violations and, if so, by what amount; and

(10)     whether the injunctive relief sought in paragraph 36 should issue.

29.     **Injunctive Relief Is Appropriate**.  Horizon Global and CMI have acted on grounds that apply generally to the Plaintiff Class, making injunctive relief appropriate with respect to the Plaintiff Class as a whole.

30.     **Predominance and Superiority of Class Adjudication.** This action should be maintained as a class action because a class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, (a) common questions of law and fact, including those identified in paragraph 28, predominate over questions, if any, affecting only individual members; (b) prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants; (c) proof of Plaintiffs' claims will also prove the claims of the proposed class without the need for separate and individualized proceedings and the statutory damages provided by the TCPA are the same for all members of the proposed class, such that damages can be calculated with mathematical certainty; and (d) Defendants have acted pursuant to common policies and practices in the same or similar manner with respect to all members of the Plaintiff Class; (e) the practical economics of litigation and the potential recovery from individual litigation make it uneconomical for class members to prosecute individual claims; (f) class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings in the event individual cases are brought; (g) and class litigation would serve to educate members about their legal right to stop unwanted facsimile advertising, a particularly important interest in light of Defendants' failure to make disclosures required under the TCPA.

31.     **Appropriate Method for Fair and Efficient Resolution of the Controversy.** A class action is an appropriate method for the fair and efficient

adjudication of the controversy for several reasons:

A.    Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

B.    Because Defendants have acted on grounds that apply generally to the class, final injunctive relief is appropriate respecting the class as a whole.

C.    Questions of law and fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

D.    Common questions of law and fact, including those identified in paragraph 28, predominate over questions affecting only individual members.

E.    Absent class certification there is a possibility of multiple individual cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

F.    Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action. Individual action to remedy Defendants' violations would be grossly uneconomical. As a practical

matter, the claims of the Plaintiff Class are not likely to be redressed absent class certification.

G.     Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the fees and costs of litigation among class members in relationship to the benefits received.

32.     **Notice**. Plaintiffs contemplate that notice be provided to all members of the Plaintiff Class that can be identified through reasonable effort. The notice will concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues and defenses; that a class member may enter an appearance through counsel if the member so desires; if the class is certified that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members.

**Count I: Claim for Relief for Violations of the TCPA and FCC Regulations**

33.     **Incorporation**. Plaintiffs and the Plaintiff Class reassert the allegations set forth in paragraphs 1 through 32 above.

34.     **Direct Liability of Horizon Global and CMI for Violations of the Prohibition of Unsolicited Facsimile Advertising.** On and after June 8, 2013, including, without limitation, on July 19, 2016, November 9, 2016, November 16, 2016, November 30, 2016, and May 4, 2017, and continuing to the present, Horizon Global and CMI violated 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. 64.1200(a)(1)(4) by using a telephone facsimile machine, computer, or other device to send unsolicited facsimile advertisements to telephone facsimile machines of Plaintiffs and other members of the Plaintiff Class. Horizon Global and CMI are each senders of all unsolicited facsimile advertisements and are therefore directly liable for these violations because they were persons on whose behalf the advertisements were sent and, in the alternative, because their goods and services were advertised or promoted in the facsimile advertisements.

35.     **Horizon Global's Vicarious Liability.** In the alternative, Horizon Global is vicariously liable for CMI's violations of 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. 64.1200(a)(1)(4) because, on information and belief, in addition to the reasons set forth in paragraph 20, Horizon Global (1) retained CMI as its authorized agent to promote the sale of its products and services, and sending facsimile advertisements were within the course and scope of the agency; (2) exercised actual control over the operation of the illegal fax-blasting program; (3) had the ability to control the operation of the illegal fax-blasting program; (4) actively participated in the illegal fax-blasting program; and (5) received, ratified and retained benefits received from the illegal fax-blasting program.

36. **Injunctive Relief.** Subsection (b)(3)(A) of the TCPA authorizes Plaintiffs to bring an action to enjoin a violation of the act and/or FCC regulations. Plaintiffs request that preliminary and permanent injunctions issue to: (1) prohibit Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from committing further violations of the Act and FCC regulations, and thereby, among other things, prohibiting Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with it, from sending to any person or entity any further unsolicited fax advertisements; (2) require Defendants to deliver to Plaintiffs all records of facsimile advertisements that are the subject of this lawsuit, including all content sent via facsimile, fax lists used, and records of transmission; (3) require Defendants to adopt ongoing educational, training and monitoring programs to ensure compliance with the TCPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendants to provide written notice to all persons and entities to whom they sent, via facsimile transmission, advertisements in violation the act and/or FCC regulations, warning such persons and entities that the facsimile transmission of unsolicited advertisements is in violation of the TCPA and FCC regulations and that they should not be led or encouraged in any way by Defendants' violations of the act and/or FCC regulations to send advertisements of their own that violate the act and/or FCC regulations; and (5) require Defendants to conspicuously place on the homepage of their respective websites the warnings contained in subparagraph 4 of this paragraph.

37.     **Damages**.  Subsection (b)(3)(B) of the Act provides for the recovery of damages in the minimum amount of $500 for each violation by Defendants of the TCPA and/or FCC regulations alleged in this Count.  In addition, Plaintiffs are informed and believe, and upon such information and belief allege, that Defendants committed their violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B) of the act.

## Prayer for Relief

WHEREFORE, Craftwood, Bay Hardware, Lunada Bay, and the Plaintiff Class pray for judgment against Defendants HGC, HGA, and CMI, and each of them, as follows:

1.     In accordance with 47 U.S.C. § (b)(3)(B), awarding statutory damages in the amount of $500 for each violation of the TCPA's and/or FCC's prohibition against unsolicited facsimile advertisements in an amount not less than $5 million, and trebling of such statutory damages;

2.     Entering the preliminary and permanent injunctions requested in paragraph 36 of this Complaint;

3.     Certifying the Plaintiff Class defined in paragraph 23 of this Complaint;

4.      Appointing Plaintiffs as representatives for the Plaintiff Class and awarding them an incentive award for their efforts as class representatives;

5.      Appointing Plaintiffs' counsel as counsel for the Plaintiff Class;

6.      Ordering that Plaintiffs' costs of litigation, including, without limitation, costs of suit and Pleattorneys' fees, be apportioned among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

7.      Ordering Defendants to provide notice to members of the Plaintiff Class proposed in paragraph 23, at their own expense, of the pendency of this action and all other notices ordered by the Court;

8.      Awarding prejudgment interest; and

9.      Awarding such other and further relief as the Court shall deem just and proper.

DATED: August 31, 2017        TROBE, BABOWICE & ASSOCIATES, LLC

Peter Trobe, Atty. No. 2857863
Michael D. Furlong, Atty. No. 6289523
404 West Water Street
Waukegan, Illinois 60085
Telephone: (847) 625-8700

Attorneys for Plaintiffs Craftwood Lumber Company,
Craftwood II, Inc., dba Bay Hardware, and Craftwood
III, Inc., dba Lunada Bay Hardware, on behalf of
themselves and all others similarly situated

**Exhibit "1"**

07-19-2016 12:40          630-916-0735        Craftwood Lumber & Hardware          1/2

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive
# Marketing Inc.

| To: Store Manager/Owner | From: Comprehensive Marketing Inc. |
|---|---|
| Phone: | Pages: 2 |
| Re: Reese Secure Camo Ratchet Tie Down | E-Mail: |



Camping season is in full swing and hunting season is just around the corner.
Reese Secure is offering a drop ship promotion and cap on Camouflage
ratcheting tie downs.

See following page for details on how to take advantage of this promotion. Only
available while supplies last!



- 8 Foot Durable Webbing
- Stamped Steel Handle
- Vinyl Coated Steel Hooks
- Part Number 9485500
- Bulk Packaging

$1.98 EACH! PREPAID FREIGHT ON 50 PCS.
ORDER IN MULTIPLES OF 10.

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have, 1-800-
366-7512, fax 1-630-916-0735.

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee.
If you have received this message in error, or if the recipient of this communication does not desire to receive
future communications from this sender, the recipient must notify the sender of this same with a return fax to
630-916-0735 or call Toll Free 1-50-326-2920



## Drop Ship HOT BUY!
## Perfect End Cap
## Promotion For Hunting Season

### Cost: $1.98 ea
### Min Purchase 50pcs Prepaid!

While Supplies last- Minimum Order 50 pcs, Order in Multiples of 10.



## Camo Ratchet Tie Down

Camo ratchet is lightweight, rugged and designed to hold up to the elements

- Composite Steel Handle
- Vinyl Coated Steel Hooks
- 400 lbs. Working Load
- 1200 lbs. Break Strength
- 8820100 Drew Weight
- Part Number: 9585D
- Packaging: Bulk
- MSRP: $5.99

Questions or to place an order:
888-362-7573, 630-916-0735, email:
customerservice@comprehensive1.com

Qty _____    Store# _____    PO# _____

Store Info:

05-04-2017 12:11          630-916-0735          1-847-831-2805                    1/2

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | StoreManager/Owner | From: | Comprehensive Marketing Inc. |
|---|---|---|---|
| Phone: | | Pages: 2 | |
| Re: May Flip Mop Hot Buy | | E-Mail: customerservice@comprehensive1.com | |

## Harper Drop Ship Hot Buy for May!!!
## 2 in 1 Microfiber Flip Mop

Harper "2 in 1" Microfiber Flip Mop #1182908

Product Features & Benefits:
• Perfect for Quick and Easy Daily Clean-up
• Household Cleaning Item for multi-use daily use
• Dry Microfiber Side is Best for Dusting
• Great for Picking Up Pet Hair & Ideal for Wood Floors and Tile
• Wet Side is Used for Mopping – Best with Spray On Cleaners
• Ideal for Smooth Surfaces
• Easy to Clean, Machine Washable
• Steel Handle with Hang Up Cap for Easy and Convenient Storage

** Minimum Purchase 18 units (master cartons of 6). With this you'll receive:

• Pre-paid Freight
• $4.95 Promo Cost.....Reg. Cost $6.60 = 25% Savings
• Over 50% Margin @ $9.99 MSRP
• Additional quantities of 6 (master carton = 6) can be added to 18 unit order and still qualify for prepaid freight.

## **Order Form To Follow**

Please call us at Comprehensive Marketing Inc. for any questions you may have. 1-800-366-7512,
Fax 1-630-916-0735, Email customerservice@comprehensive1.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee if you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-2926

05-04-2017 12:11     630-916-0735     1-847-831-2805     2/2





# Harper Drop Ship Hot Buy for May!!!
## 2 in 1 Microfiber Flip Mop

Harper "2 in 1" Microfiber Flip Mop #1182908

**Product Features & Benefits:**

- Perfect for Quick and Easy Daily Clean-up
- Household Cleaning Item for multi-use daily use
- Dry Microfiber Side is Best for Dusting
  - Great for Picking Up Pet Hair & Ideal for Wood Floors and Tile
- Wet Side is Used for Mopping — Best with Spray On Cleaners
  - Ideal for Smooth Surfaces
- Easy to Clean, Machine Washable
- Steel Handle with Hang Up Cap for Easy and Convenient Storage

Promo has a Minimum Purchase of 18 units (master cartons of 6). With that you'll receive:

- Freight Pre-paid on Qualifying Order
- $4.95 Promo Cost... Reg. Cost $6.60 = 25% Savings
- Over 50% Margin @ $9.99 MSRP
- Add qtys of 6 (master carton) to 18 unit Order and receive Discount & Freight Pre-paid

Order Qty: _____

Store Info:

**Comprehensive Marketing Inc. 1-800-366-7512.  Fax 1-630-916-0735.  E-mail customerservice@comprehensive1.com**

**Exhibit "3"**

200 W. 22nd Street
Suite #235
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive
# Marketing Inc.

| To: | Store/Manager/Owner | From: | Comprehensive Marketing Inc. |
|---|---|---|---|
| Phone: | | Pages: | 2 |
| Re: Reese Secure Camp Product Tie Down | | Bates: | |



Camping season is in full swing and hunting season is just around the corner. Reese Secure is offering a drop ship promotion end cap on Camouflage ratcheting tie downs.

See following page for details on how to take advantage of this promotion. Only available while supplies last!



- **8 Foot Durable Webbing**
- **Stamped Steel Handle**
- **Vinyl Coated Steel Hooks**
- **Part Number 9485500**
- **Bulk Packaging**

   **$1.98 EACH! PREPAID FREIGHT ON 50 PCS.**
   **ORDER IN MULTIPLES OF 10.**

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-366-7512, Fax 1-630-916-0735.

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee only. If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of this error with a return fax to 630-916-0735 or call Toll Free 1-800-326-2568



Drop Ship HOT BUY!
Perfect End Cap
Promotion For Hunting
Season

Cost: $1.98 ea
Min Purchase 50pcs Prepaid!

While Supplies Last- Minimum Order 50 pcs, Order In Multiples of 10.



**Exhibit "4"**

11-29-2016 14:21                    630-916-0735                              1/2

200 W. 22ᴺᴰ Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive
# Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|-----|---------------------|-------|------------------------------|
| Phone: | | Pages: | 2 |
| Re: Reese Secure Camo Ratchet Tie Down | | E-Mail: | |



Here is your last chance to take advantage of Reese Secure drop ship end cap promotion on camouflage ratcheting tie downs

See following page for details on how to take advantage. Only available until end of November or while supplies last! 11,000 sold so far!

- 8 Foot Durable Webbing
- Stamped Steel Handle
- Vinyl Coated Steel Hooks
- Part Number 9485500
- Bulk Packaging



$1.98 EACH! PREPAID FREIGHT ON 50 PCS.
ORDER IN MULTIPLES OF 10.

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have, 1-800-366-7512, Fax 1-630-916-0735.

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee if you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1877/325-2525

# Drop Ship HOT BUY!
# Perfect End cap promotion for Hunting Season



$1.98 ea.

**Min purchase 50pcs Prepaid!**
**"Sale While Supplies Last"**

While Supplies last- minimum order 50 pcs, order in multiples of 10.

## Camo Ratchet Tie Down

Camo ratchets are tough, rugged and designed to hold up to the elements.

- Stamped Steel handle
- Vinyl coated Steel Hooks
- 400 lbs. working load/1200 lbs. break strength
- 8 foot durable webbing
- Part Number: 9485500
- Packaging: Bulk
- MSRP: $5.99



Qty:_____  Store #:_____

P.O.#

Store Info:

Questions or to place an order:
800-365-7512
F: 630-916-0735 or email to
customerservice@comprehensive1.com

**Exhibit "5"**

11-16 2016 9:18          630 916-C735          1-562-994-4054          1/2

200 W. 27th Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|---|---|---|---|
| Phone: | | Pages: | 2 |
| | Re: Get Organized. | E-Mail: | |

**REESE SECURE**

## Winter is Coming. Get Ready and Get Organized With Triple Strength Bungee Cords From Reese Secure.

### Stackable & Convenient
### Multiple Uses
Coated steel hooks won't bend, break, scratch or mark.

6 Piece Assorted Triple Strength Bungee Cords, Part Number 9429200, $3.80 each, Min Buy 30 each, Retail $9.99

6 Piece Assorted Fat Strap Bungee Cords, Part Number 9002900, $4.14 each, Min Buy 24 each, Retail $12.75

### PREPAID FREIGHT $99

### *Available while supplies last*

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-366-7512, Fax 1-630-916-0735. Email customerservice@comprehensivemi.com.

Confidentiality Notice
The information in this facsimile message is privileged and confidential information intended for the addressee. If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the vendor, the recipient must notify the sender of the same with a return fax to 800-816-0735 or call toll free 1-877-328-2526

11-28-2016 9 18        630-916-0735        1 562-594-4054        2/2







Qty.____ Fat Strap Cords Part # 9002900 $4.14 ea.

Qty.____ Triple Strength Cords Part # 9429200 $3.80 ea.

P.O.# _____

Store # _____

Name, Address, Phone, Fax:

_____

_____

_____

Questions or to place an order:
800-366-7512
F: 630-916-0735 or email to
customerservice@comprehensive1.com

## REESE SECURE

**Get Organized!**

**Stackable & Convenient**

**6 piece assorted Triple Strength Bungee Cords**

**$99 Pre-Paid Freight While Supplies Last**

Part # 9002900
$4.14 ea.
Min Buy 24 ea.

Part # 9429200
$3.80 ea.
Min Buy 30 ea.











## HIGHLAND

**Get Organized!**

**Stackable & Convenient**

**6 piece assorted Fat Strap Bungee Cords**

**Exhibit "6"**

11-30-2016 7 51          520-916-0735          1-562-594-4054          1/2

200 W. 22ⁿᵈ Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|---|---|---|---|
| Phone: | | Pages: | 2 |
| Re: Get Organized | | E-Mail: | |



## Winter is Coming. Get Ready and Get Organized With Triple Strength Bungee Cords From Reese Secure.

### Stackable & Convenient
### Multiple Uses
#### Coated steel hooks won't bend, break, scratch or mark.

**6 Piece Assorted Triple Strength Bungee Cords. Part Number 9429200. $3.80 each. Min Buy 30 each. Retail $9.99**

**6 Piece Assorted Fat Strap Bungee Cords. Part Number 9002900. $4.14 each. Min Buy 24 each. Retail $12.75**

### PREPAID FREIGHT $99

### *Available while supplies last*

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-366-7512, Fax 1-630-916-0735. Email customerservice@comprehensive1.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-2526



Qty: ____ Fat Strap Cords Part # 9002900 $4.14 ea.

Qty: ____ Triple Strength Cords Part # 9429200 $3.80 ea.

P.O. # _____

Store # _____

Name, Address, Phone, Fax
_____
_____
_____

Questions or to place an order:
800-366-7512
F: 630-916-0735 or email to
customerservice@comprehensive1.com





**REESE SECURE**

Get Organized!

Stackable & Convenient

6 piece assorted Triple
Strength Bungee Cords

$99 Pre-Paid Freight
While Supplies Last
Part # 9002900
$4.14 ea.
Min Buy 24 ea.

Part # 9429200
$3.80 ea.
Min Buy 30 ea.



**HIGHLAND**

Get Organized!

Stackable & Convenient

6 piece assorted
Fat Strap Bungee Cords

**Exhibit "7"**

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: Store Manager/Owner | From: Comprehensive Marketing Inc. |
|---|---|
| Phone: | Pages: 2 |
| Re: May Flip Mop Hot Buy | E-Mail: customerservice@comprehensive1.com |

# Harper Drop Ship Hot Buy for May!!!
# 2 in 1 Microfiber Flip Mop

## Harper "2 in 1" Microfiber Flip Mop #1182908

### Product Features & Benefits:
• Perfect for Quick and Easy Daily Clean-up
• Household Cleaning Item for multi-use daily use
• Dry Microfiber Side is Best for Dusting
• Great for Picking Up Pet Hair & Ideal for Wood Floors and Tile
• Wet Side is Used for Mopping – Best with Spray On Cleaners
• Ideal for Smooth Surfaces
• Easy to Clean, Machine Washable
• Steel Handle with Hang Up Cap for Easy and Convenient Storage

**\*\* Minimum Purchase 18 units (master cartons of 6). With this you'll receive:**

• Pre-paid Freight
• $4.95 Promo Cost…..Reg. Cost $6.60 = 25% Savings
• Over 50% Margin @ $9.99 MSRP
• Additional quantities of 6 (master carton = 6) can be added to 18 unit order and still qualify for prepaid freight.

## \*\*Order Form To Follow\*\*

Please call us at Comprehensive Marketing Inc. for any questions you may have. 1-800-366-7512, Fax 1-630-916-0735, Email: customerservice@comprehensive1.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee if you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-2526










# Harper Drop Ship Hot Buy for May!!!
## 2 in 1 Microfiber Flip Mop

Harper "2 in 1" Microfiber Flip Mop #1182908

**Product Features & Benefits:**

- Perfect for Quick and Easy Daily Clean-up
- Household Cleaning Item for multi-use daily use
- Dry Microfiber Side is Best for Dusting
  - Great for Picking Up Pet Hair & Ideal for Wood Floors and Tile
- Wet Side is Used for Mopping — Best with Spray On Cleaners
  - Ideal for Smooth Surfaces
- Easy to Clean, Machine Washable
- Steel Handle with Hang Up Cap for Easy and Convenient Storage

Promo has a Minimum Purchase of 18 units (master cartons of 6). With that you'll receive:

- Freight Pre-paid on Qualifying Order
- $4.95 Promo Cost...Reg. Cost $6.60 = 25% Savings
- Over 50% Margin @ $9.99 MSRP
- Add qtys of 6 (master carton) to 18 unit Order and receive Discount & Freight Pre-paid

**Order Qty:** _____

**Store Info:**







Comprehensive Marketing Inc. 1-800-366-7512.   Fax 1-630-916-0735.   E-mail customerservice@comprehensive1.com

**Exhibit "8"**

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: Store Manager/Owner | From: Comprehensive Marketing Inc. |
|---|---|
| Phone: | Pages: 2 |
| Re: Reese Secure Camo Ratchet Tie Down | E-Mail: |



**Here is your last chance to take advantage of Reese Secure drop ship end cap promotion on camouflage ratcheting tie downs**

See following page for details on how to take advantage. Only available until end of November or while supplies last! 11,000 sold so far!

- 6 Foot Durable Webbing
- Stamped Steel Handle
- Vinyl Coated Steel Hooks
- Part Number 9485500
- Bulk Packaging



**$1.98 EACH! PREPAID FREIGHT ON 50 PCS. ORDER IN MULTIPLES OF 10.**

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-366-7512, Fax 1-630-916-0735.

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee if you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-329-2926



# Drop Ship HOT BUY!
## Perfect End cap promotion for Hunting Season

$1.98 ea.

**Min purchase 50pcs Prepaid!**
"Sale While Supplies Last"

While Supplies last- minimum order 50 pcs, order in multiples of 10.



## Camo Ratchet Tie Down

Camo ratchets are tough, rugged and designed to hold up to the elements.

- Stamped Steel handle
- Vinyl coated Steel Hooks
- 400 lbs. working load/1200 lbs. break strength
- 8 foot durable webbing
- Part Number: 9485500
- Packaging: Bulk
- MSRP: $5.99

Qty:_____ Store #:_____

P.O.#_____

Store Info:

Questions or to place an order:
800-366-7512
F: 630-916-0735 or email to
customerservice@comprehensive1.com



**Exhibit "9"**

11-16-2016 9:18          630-916-0735          1-310-377-5827          1/2

200 W. 22ⁿᵈ Street
Suite #255
Lombard, IL 60148
Phone: 800-368-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|---|---|---|---|
| Phone: | | Pages: | 2 |
| Re: Get Organized | | E-Mail: | |



## Winter is Coming, Get Ready and Get Organized With Triple Strength Bungee Cords From Reese Secure.

### Stackable & Convenient
### Multiple Uses
### Coated steel hooks won't bend, break, scratch or mark.

## 6 Piece Assorted Triple Strength Bungee Cords. Part Number 9429200. $3.80 each. Min Buy 30 each. Retail $9.99

## 6 Piece Assorted Fat Strap Bungee Cords. Part Number 9002900. $4.14 each. Min Buy 24 each. Retail $12.75

## PREPAID FREIGHT $99

## *Available while supplies last*

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-368-7512; fax 1-630-916-0735. Email customerservice@comprehensivemi.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information intended for the addressee If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of this name with a return fax to 630-916-0735 or call Toll Free 1-877-325-2526









Qty:____  Fat Strap Cords Part # 9002900 $4.14 ea.

Qty:____  Triple Strength Cords Part # 9429200 $3.80 ea.

P.O.#

Store #

Name, Address, Phone, Fax

Questions or to place an order:
800-366-7512
F: 630-916-0735 or email to
customerservice@comprehensive1.com

**REESE**

Get Organized!

Stackable & Convenient

6 piece assorted Triple Strength Bungee Cords

Part # 9429200
$3.80 ea.
Min Buy 30 ea.

$99 Pre-Paid Freight
While Supplies Last

Part # 9002900
$4.14 ea.
Min Buy 24 ea.

**HIGHLAND**

Get Organized!

Stackable & Convenient

6 piece assorted
Fat Strap Bungee Cords

**Exhibit "10"**

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|---|---|---|---|
| Phone: | | Pages: | 2 |
| Re: Get Organized | | E-Mail: | |



## Winter Is Coming: Get Ready and Get Organized With Triple Strength Bungee Cords From Reese Secure.

### Stackable & Convenient
### Multiple Uses
Coated steel hooks won't bend, break, scratch or mark.

**6 Piece Assorted Triple Strength Bungee Cords. Part Number 9429200. $3.80 each. Min Buy 30 each. Retail $9.99**

**6 Piece Assorted Fat Strap Bungee Cords. Part Number 9002900. $4.14 each. Min Buy 24 each. Retail $12.75**

## PREPAID FREIGHT $99

## *Available while supplies last*

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-366-7512, Fax 1-630-916-0735. Email customerservice@comprehensive2.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee if you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-2526

**Exhibit "11"**

05-04-2017 12:10          630-916-0735          1-310-377-5827          1/2

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|---|---|---|---|
| Phone: | | Pages: | 2 |
| Re: May Flip Mop Hot Buy | | E-Mail: | customerservice@comprehensive1.com |

## Harper Drop Ship Hot Buy for May!!!
## 2 in 1 Microfiber Flip Mop

### Harper "2 in 1" Microfiber Flip Mop #1182908

**Product Features & Benefits:**
• Perfect for Quick and Easy Daily Clean-up
• Household Cleaning Item for multi-use daily use
• Dry Microfiber Side is Best for Dusting
• Great for Picking Up Pet Hair & Ideal for Wood Floors and Tile
• Wet Side is Used for Mopping – Best with Spray On Cleaners
• Ideal for Smooth Surfaces
• Easy to Clean, Machine Washable
• Steel Handle with Hang Up Cap for Easy and Convenient Storage

**\*\* Minimum Purchase 18 units (master cartons of 6). With
this you'll receive:**

• Pre-paid Freight
• $4.95 Promo Cost...:..Reg. Cost $6.60 = 25% Savings
• Over 50% Margin @ $9.99 MSRP
• Additional quantities of 6 (master carton = 6) can be added to 18 unit order and still qualify
for prepaid freight.

## **\*\*Order Form To Follow\*\***

Please call us at Comprehensive Marketing Inc. for any questions you may have, 1-800-366-7512;
Fax 1-630-916-0735, Email customerservice@comprehensive1.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee. If you have received
this message in error, or if the recipient of this communication does not desire to receive future communications from the sender.
The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-2526

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS**

Craftwood Lumber Company, *et al.*,

      Plaintiffs,

      v.

Horizon Global Corporation, *et al.*,

      Defendants.

Case No.    **17 CH 1213**

*FILED*
*AUG 8 1 2017*
*Eric Cardwell Weinstein*
*CIRCUIT CLERK*

**Jury Demand**

Plaintiffs demand trial by jury on all issues triable by jury.

DATED: August 31, 2017      TROBE, BABOWICE & ASSOCIATES, LLC

Peter Trobe, Atty. No. 2857863
Michael D. Furlong, Atty. No. 6289523
404 West Water Street
Waukegan, Illinois 60085
Telephone: (847) 625-8700

Attorneys for Plaintiffs Craftwood Lumber Company, Craftwood II, Inc., dba Bay Hardware, and Craftwood III, Inc., dba Lunada Bay Hardware, on behalf of themselves and all others similarly situated

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

| | |
|---|---|
| Craftwood Lumber Company, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>Horizon Global Corporation, *et al.*,<br><br>    Defendants. | Case No. 17 CH 1213 |



FILED

SEP 0 8 2017

*Erin Cartwright Weinstein*
CIRCUIT CLERK

### NOTICE OF FILING

**TO:  SEE ATTACHED SERVICE LIST**

PLEASE TAKE NOTICE that on the 8th day of September, 2017, there was filed with the Clerk of the Circuit Court of Lake County, Illinois, the following:

**AFFIDAVIT OF DIANA B. NEWTON**

TROBE, BABOWICE & ASSOCIATES, LLC

By: _____
      One of Plaintiffs' attorneys

Michael D. Furlong (Atty. No. 6289523)
Peter M. Trobe (Atty. No. 2857863)
Trobe, Babowice & Associates LLC
404 W. Water Street
Waukegan, IL 60085
Phone: (847) 625-8700

## CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the foregoing was served upon the persons to whom directed by regular mail and email at Waukegan, Illinois, at or before the hour of 5:00 p.m. on September 8, 2017.

## SERVICE LIST

*Counsel for Horizon Global Corporation and Horizon Global Americas, Inc.:*
Bart Murphy
Ice Miller LLP
2300 Cabot Drive
Suite 455
Lisle, IL 60532
Email: Bart.Murphy@icemiller.com

*Counsel for Comprehensive Marketing, Inc.:*
Paul Bozych, Esq.
Nielsen, Zehe & Antas, P.C.
55 W. Monroe Street, Suite 1800
Chicago, Illinois 60603
Fax: (312) 322-9977
Email: pbozych@nzalaw.com

Matthew Brown
C. Darryl Cordero
Payne & Fears LLP
1100 Glendon Avenue, Suite 1250
Los Angeles, CA 90024
Email: mkb@paynefears.com
Email: cdc@paynefears.com

## IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

## COUNTY DEPARTMENT, CHANCERY DIVISION

Craftwood Lumber Company, *et al.,*

        Plaintiffs,

        v.

Horizon Global Corporation, *et al.,*

        Defendants.

Case No. 17 CH 1213



### Affidavit of Diana B. Newton

I, Diana B. Newton, being first duly sworn and under oath, state the following to be true of my own personal knowledge, information and belief:

1.    I am an officer of both Craftwood II, Inc., and Craftwood III, Inc., (collectively, "Plaintiffs") two of the named plaintiffs in this action. Craftwood II, Inc., does business under the name "Bay Hardware" a hardware store in downtown Seal Beach, California. I have been in charge of Bay Hardware's day-to-day operations since 2009. Craftwood III, Inc., does business under the name "Lunada Bay Hardware" ("Lunada Bay"), a hardware store in Palos Verdes Estates, California. I have been in charge of Lunda Bay's day-to-day operations since 2013.

2.      I received a B.S. degree from Indiana University Bloomington and attended the Quinlan School of Business, Loyola University Chicago, in pursuit of a M.B.A. degree.  I suspended my M.B.A. studies in order to manage a hardware store.  I intend to complete my M.B.A. studies when my schedule allows.  I have worked in the hardware business since 1996 and, in addition, I worked for almost three years as a Director of a Huntington Learning Center (where I was responsible for managing the entire center, including up to thirty part-time teachers and two full time staff members).  I am past President of the Seal Beach Chamber of Commerce (2013-2014).

3.      I caused Bay Hardware and Lunada Bay to bring this lawsuit and request appointment as class representative because of our desire to stop, as much as possible, junk faxes and to obtain monetary and other relief for the class.  I believe junk faxes are a serious problem for businesses and consumers.  Junk faxes disrupt our business operations, tie up our fax machine and interfere with its business use, require someone to go through the junk faxes to dispense with them, force us to consume paper, toner, and electricity against our wishes, and cause wear and tear on our business equipment.

4.      Bay Hardware has been the subscriber of the telephone number (562) 594-4054 for many years.  Throughout this time, that telephone number has been connected to a fax machine located in our office.  On a regular basis we receive, at this fax machine, unsolicited faxes of an advertising nature.

- 2 -

5.      Bay Hardware has received at its fax telephone number at least five unsolicited junk faxes advertising Defendants' products and services.  Bay Hardware has retained copies of these faxes.  True and correct copies of these faxes, which Bay Hardware received on or about July 19, 2016, November 9, 2016, November 16, 2016, November 30, 2016, and May 4, 2017, are attached hereto as Exhibits 1 through 5.  I believe that Bay Hardware received other facsimile advertisements from Defendants, but did not retain copies.  To the best of my knowledge, information, and belief, Bay Hardware did not give any Defendant prior express permission to send facsimile advertisements.

6.      Lunada Bay has been the subscriber of the telephone number (310) 377-5827 for many years.  Throughout this time, that telephone number has been connected to a fax machine located in the hardware store.  On a regular basis we receive, at this fax machine, unsolicited faxes of an advertising nature from persons and companies.

7.      Lunada Bay has received at its fax telephone number at least four unsolicited junk faxes advertising Defendants' products and services.  Lunada Bay has retained copies of these faxes.  True and correct copies of these faxes, which Lunada Bay received on or about November 9, 2016, November 16, 2016, November 30, 2016, and May 4, 2017, are attached hereto as Exhibits 6 through 9.  I believe that Lunada Bay received other facsimile advertisements from Defendants, but did not retain copies.  To the best of my knowledge, information, and belief, Lunada Bay did not give any

Defendant prior express permission to send facsimile advertisements.

8.      I complained on approximately 75 occasions to the Federal Communications Commission about junk faxes sent to Bay Hardware. To my knowledge the FCC did not take any action in response to any of my complaints. My experience has convinced me that the only way to stop junk faxes is by legal action to enforce the anti-junk fax laws.

9.      My experience has convinced me that the only way to stop junk faxes is through legal action to enforce the anti-junk fax laws. This is why Bay Hardware has proudly assumed the role and responsibilities of class representative in other private actions to enforce the TCPA's prohibition of junk faxes. Craftwood served as court-appointed class representative in a class case against Tomy International in the Central District of California., in which we obtained a $10 million recovery for the class of TOMY junk fax recipients. In that case, Bay Hardware rejected individual settlement offers from the defendants, and instead prosecuted the cases vigorously on behalf of the class.

10.      I recognize Plaintiffs' responsibilities as class representatives to fairly and adequately protect the interests of the class members in the case. I am prepared to discharge those responsibilities in the interest of the proposed class. I am committed to keeping abreast of developments in the case and to exercise my independent judgment in

order to discharge Plaintiffs' duties as class representatives. Plaintiffs also will not place their interests ahead of the interests of the class members. I know of no antagonistic or conflicting interests between Plaintiffs and class members.

11.     Neither Plaintiffs nor I have been provided any financial consideration to prosecute this case, nor have we been promised any such consideration. I understand that if there is a successful class recovery Plaintiffs, as class representatives, may request an incentive award, but that any incentive award is entirely discretionary with the court. I understand and accept that, aside from any incentive award and any recovery shared with members of the class, Plaintiffs cannot receive any additional award, monies, or other benefits in connection with the case. I also understand that if there is a successful class recovery, Plaintiffs' attorneys will ask the Court for payment of their fees and costs incurred in rendering services to Plaintiffs and the class.

I declare under penalty of perjury under the laws of the state of Illinois that the foregoing is true and correct. Executed this 5th day of ~~August~~ September 2017 at Seal Beach, California.

Diana B. Newton
9/5/17

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not to the truthfulness, accuracy, or validity of that document

State of California )
)
County of Orange )

Subscribed and sworn to (or affirmed) before me on this __5__ day of ~~August~~ SEPTEMBER 2017 by

DIANA B NEWTON _____, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Signature of Notary Public

JAMES DIAZ
Notary Public - California
Orange County
Commission # 2148136
My Comm. Expires Apr 1, 2020

- 6 -

Exhibit "1"

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive
# Marketing Inc.

| To: Store Manager/Owner | From: Comprehensive Marketing Inc. |
| --- | --- |
| Phone: | Pages: 2 |
| Re: Reese Secure Camp Product Tie Down | # Mfg: |



Camping season is in full swing and hunting season is just around the corner.
Reese Secure is offering a drop ship promotion end cap on Camouflage
ratcheting tie downs.

**See following page for details on how to take advantage of this promotion. Only
available while supplies last!**



- **8 Foot Durable Webbing**
- **Stamped Steel Handle**
- **Vinyl Coated Steel Hooks**
- **Part Number 9485500**
- **Bulk Packaging**

   **$1.98 EACH! PREPAID FREIGHT ON 50 PCS.
   ORDER IN MULTIPLES OF 10.**

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-
366-7512, Fax 1-630-916-0735.

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee
if you have received this message in error, or if the recipient of this communication does not desire to receive
future communications from the sender. The recipient must notify the sender of this error with a return fax to
630-916-0735 or call Toll Free 1-800-326-2885



Drop Ship HOT BUY!
Perfect End Cap
Promotion For Hunting Season

Cost $1.98 ea
Min Purchase 50pcs Prepaid!

While Supplies Last- Minimum Order 50 pcs, Order in Multiples of 10.



Camo Ratchet Tie Down

Exhibit "2"

11-15-2016 14:21          630-916-0735          1/2

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive
# Marketing Inc.

| | |
|---|---|
| **To:** Store Manager/Owner | **From:** Comprehensive Marketing Inc. |
| **Phone:** | **Pages:** 2 |
| **Re:** Reese Secure Cargo Ratchet Tie Down | **E-Mail:** |



**Here is your last chance to take advantage of Reese Secure drop ship end cap promotion on camouflage ratcheting tie downs**

**See following page for details on how to take advantage. Only available until end of November or while supplies last! 11,000 sold so far!**

- 8 Foot Durable Webbing
- Stamped Steel Handle
- Vinyl Coated Steel Hooks
- Part Number 9485500
- Bulk Packaging



**$1.98 EACH! PREPAID FREIGHT ON 50 PCS.
ORDER IN MULTIPLES OF 10.**

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have, 1-800-366-7512, Fax 1-630-916-0735.

Confidentiality Notice
This information in this facsimile message is privileged and confidential information, intended for the addressee. If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-3138.

11-26 2016 14:21     630-916-0735     2/8

# Drop Ship HOT BUY!
## Perfect End cap promotion for Hunting Season





$1.98 ea.
Min purchase 50pcs Prepaid!
"Sale While Supplies Last"

While Supplies last- minimum order 50 pcs, order in multiples of 10.

## Camo Ratchet Tie Down

Camo ratchets are tough, rugged and designed to hold up to the elements.

- Stamped Steel handle
- Vinyl coated Steel Hooks
- 400 lbs. working load/1200 lbs. break strength
- 8 foot durable webbing
- Part Number: 9485500
- Packaging: Bulk
- MSRP: $5.99



Qty:_____ Store #:_____

P.O.#_____

Store Info:

Questions or to place an order:
800-366-7512
F: 630-916-0735 or email to
customerservice@comprehensive1.com



Exhibit "3"

11-16 2016 9:18          630 916-C735          1-562-994-4054          1/2

200 W. 27th Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
| Phone: | | Pages: | 2 |
| Re: Get Organized | | E-Mail: | |

**PLEASE SECURE**

## Winter is Coming. Get Ready and Get Organized With Triple Strength Bungee Cords From Reese Secure.

### Stackable & Convenient
### Multiple Uses

Coated steel hooks won't bend, break, scratch or mark.

**6 Piece Assorted Triple Strength Bungee Cords. Part Number 9429200. $3.80 each. Min Buy 30 each. Retail $9.99**

**6 Piece Assorted Fat Strap Bungee Cords. Part Number 9002900. $4.14 each. Min Buy 24 each. Retail $12.75**

### PREPAID FREIGHT $99

### *Available while supplies last*

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-366-7512, Fax 1-630-916-0735, Email customerservice@comprehensivmkt.com

Confidentiality Notice

The information on this facsimile message is privileged and confidential information intended for the addressee. If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the vendor. The recipient must notify the sender of the facsimile with a return fax to 630-916-0735 or toll free 1-877-326-2526

11-18-2016 9 18     630-916-0735     1-866-594-4054     2/2



Qty: _____ Fat Strap Cords Part # 9002900 $4.14 ea.

Qty: _____ Triple Strength Cords Part # 9429200 $3.80 ea.

P.O.#

Store #

Name, Address, Phone, Fax

Questions or to place an order:
800-366-7512
F: 630-916-0735 or email to
customerservice@comprehensive-1.com



$99 Pre-Paid Freight
While Supplies Last
Part # 9002900
$4.14 ea.
Min Buy 24 ea.

Get Organized!
Stackable & Convenient
6 piece assorted Triple
Strength Bungee Cords



HIGHLAND

Get Organized!
Stackable & Convenient
6 piece assorted
Fat Strap Bungee Cords





REESE SECURE

Part # 9429200
$3.80 ea.
Min Buy 30 ea.

Exhibit "4"

21-25-2016 7 51          520-916-0735          1-562-534-4054          1/2

200 W. 72ⁿᵈ Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|-----|---------------------|-------|------------------------------|
| Phone: | | Pages: | 2 |
| Re: Get Organized | | E-Mail: | |



## Winter is Coming. Get Ready and Get Organized With Triple Strength Bungee Cords From Reese Secure.

### Stackable & Convenient
### Multiple Uses
#### Coated steel hooks won't bend, break, scratch or mark.

**6 Piece Assorted Triple Strength Bungee Cords. Part Number 9429200. $3.80 each. Min Buy 30 each. Retail $9.99**

**6 Piece Assorted Fat Strap Bungee Cords. Part Number 9002900. $4.14 each. Min Buy 24 each. Retail $12.75**

## PREPAID FREIGHT $99

### *Available while supplies last*

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-386-7512, Fax : -630-916-0735. Email customerservice@comprehensive2.com)

Confidentiality Notice

The information in this facsimile message is privileged and confidential information, intended for the addressee If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0731 or call Toll Free 1-877-823-2320



Qty:____ Fat Strap Cords Part # 9002900 $4.14 ea.

Qty:____ Triple Strength Cords Part # 9429200 $3.80 ea.

P.O.#_____

Store #_____

Name, Address, Phone, Fax

Questions or to place an order:
800-366-7512
F: 630-916-0735 or email to
customerservice@comprehensive1.com



**REESE** SECURE

Get Organized!

Stackable & Convenient

6 piece assorted Triple Strength Bungee Cords

$99 Pre-Paid Freight
While Supplies Last

Part # 9002900
$4.14 ea.
Min Buy 24 ea.



Part # 9429200
$3.80 ea.
Min Buy 30 ea.



**HIGHLAND**

Get Organized!

Stackable & Convenient

6 piece assorted
Fat Strap Bungee Cords

Exhibit "5"

05-04-2017 12:10          630-916-0735          1-562-594-4054          1/2

200 W. 22ND Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive
# Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
| --- | --- | --- | --- |
| Phone: | | Pages: | 2 |
| Re: May Flip Mop Hot Buy | | E-Mail: customerservice@comprehensive1.com | |

# Harper Drop Ship Hot Buy for May!!!
# 2 in 1 Microfiber Flip Mop

## Harper "2 in 1" Microfiber Flip Mop #1182908

### Product Features & Benefits:
- Perfect for Quick and Easy Daily Clean-up
- Household Cleaning Item for multi-use daily use
- Dry Microfiber Side is Best for Dusting
- Great for Picking Up Pet Hair & Ideal for Wood Floors and Tile
- Wet Side is Used for Mopping – Best with Spray On Cleaners
- Ideal for Smooth Surfaces
- Easy to Clean, Machine Washable
- Steel Handle with Hang Up Cap for Easy and Convenient Storage

## ** Minimum Purchase 18 units (master cartons of 6). With this you'll receive:

- Pre-paid Freight
- $4.95 Promo Cost….Reg. Cost $6.60 = 25% Savings
- Over 50% Margin @ $9.99 MSRP
- Additional quantities of 6 (master carton = 6) can be added to 18 unit order and still qualify for prepaid freight.

## **Order Form To Follow**

Please call us at Comprehensive Marketing Inc. for any questions you may have. 1-800-366-7512,
Fax 1-630-916-0735, Email: customerservice@comprehensive1.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-2526

05-24-2017 12:10     630-916-0735     1-562-594-4054     2/2

# Harper Drop Ship Hot Buy for May!!! 2 in 1 Microfiber Flip Mop

Harper "2 in 1" Microfiber Flip Mop #1182908

**Product Features & Benefits:**

- Perfect for Quick and Easy Daily Clean-up
- Household Cleaning Item for multi-use daily use
- Dry Microfiber Side is Best for Dusting
  - Great for Picking Up Pet Hair & Ideal for Wood Floors and Tile
- Wet Side is Used for Mopping — Best with Spray On Cleaners
  - Ideal for Smooth Surfaces
- Easy to Clean, Machine Washable
- Steel Handle with Hang Up Cap for Easy and Convenient Storage

Promo has a Minimum Purchase of 18 units (master cartons of 6). With that you'll receive:

- Freight Pre-paid on Qualifying Order
- $4.95 Promo Cost ... Reg. Cost $6.60 = 25% Savings
- Over 50% Margin @ $9.99 MSRP
- Add qtys of 6 (master carton) to 18 unit Order and receive Discount & Freight Pre-paid

Order Qty: _____

Store Info:



Comprehensive Marketing Inc. 1-800-366-7512. Fax 1-630-916-0735. E-mail customerservice@comprehensivei.com

Exhibit "6"

11-09-2016 14:21     630-916-0735     1/2

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|---|---|---|---|
| Phone: | | Pages: | 2 |
| Re: Reese Secure Camo Ratchet Tie Down | | E-Mail: | |



**Here is your last chance to take advantage of Reese Secure drop ship end cap promotion on camouflage ratcheting tie downs**

**See following page for details on how to take advantage. Only available until end of November or while supplies last! 11,000 sold so far!**

- 8 Foot Durable Webbing
- Stamped Steel Handle
- Vinyl Coated Steel Hooks
- Part Number 9485500
- Bulk Packaging



**$1.98 EACH! PREPAID FREIGHT ON 50 PCS. ORDER IN MULTIPLES OF 10.**

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-366-7512, Fax 1-630-916-0735.

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee.
If you have received this message in error, or if the recipient of this communication does not desire to receive
future communications from the sender. The recipient must notify the sender of the same with a return fax to
630-916-0735 or call Toll Free 1877-326-2523

11-09-2016 14:21      630-916-0735      2/2

# Drop Ship HOT BUY!
## Perfect End cap promotion for Hunting Season





**$1.98 ea.**

**Min purchase 50pcs Prepaid!**
*"Sale While Supplies Last"*

While Supplies last- minimum order 50 pcs, order in multiples of 10.

## Camo Ratchet Tie Down

Camo ratchets are tough, rugged and designed to hold up to the elements.

- Stamped Steel handle
- Vinyl coated Steel Hooks
- 400 lbs. working load/1200 lbs. break strength
- 8 foot durable webbing
- Part Number: 9485500
- Packaging: Bulk
- MSRP: $5.99





| Qty: ____ Store #: ____ |
| --- |
| P.O.# |
| Store Info: |
| |
| Questions or to place an order: |
| 800-366-7512 |
| F: 630-916-0735 or email to |
| customerservice@comprehensive1.com |

Exhibit "7"

11-16-2016 9:18  630-916-0735  1-310-377-5827  1/2

200 W. 22ⁿᵈ Street
Suite #255
Lombard, IL 60148
Phone: 800-368-7512

# Comprehensive
# Marketing Inc.

| To: Store Manager/Owner | From: Comprehensive Marketing Inc. |
|---|---|
| Phone: | Pages: 2 |
| Re: Get Organized | E-Mail: |



## Winter Is Coming, Get Ready and Get Organized With Triple Strength Bungee Cords From Reese Secure.

### Stackable & Convenient
### Multiple Uses
### Coated steel hooks won't bend, break, scratch or mark.

**6 Piece Assorted Triple Strength Bungee Cords, Part Number 9429200, $3.80 each. Min Buy 30 each. Retail $9.99**

**6 Piece Assorted Fat Strap Bungee Cords, Part Number 9002900, $4.14 each. Min Buy 24 each. Retail $12.75**

## PREPAID FREIGHT $99

## *Available while supplies last*

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-368-7512, fax 1-630-916-0735, Email customerservice@comprehensiveinc.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee. If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-925-2526

11-16-2016 9:18    630-916-0735    1-310-377-5827    2/2










Qty:_____ Fat Strap Cords Part # 9002900 $4.14 ea.

Qty:_____ Triple Strength Cords Part # 9429200 $3.80 ea.

P.O.#

Store #

Name, Address, Phone, Fax

Questions or to place an order:
800-366-7512
F: 630-916-0735 or email to
customerservice@comprehensive1.com

**REESE**
SECURE

Get Organized!

Stackable & Convenient

6 piece assorted Triple Strength Bungee Cords

Part # 9429200
$3.80 ea.
Min Buy 30 ea.

$99 Pre-Paid Freight
While Supplies Last
Part # 9002900
$4.14 ea.
Min Buy 24 ea.






**HIGHLAND**

Get Organized!

Stackable & Convenient

6 piece assorted
Fat Strap Bungee Cords

Exhibit "8"

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|---|---|---|---|
| Phone: | | Pages: | 2 |
| Re: Get Organized | | E-Mail: | |



## Winter is Coming: Get Ready and Get Organized With Triple Strength Bungee Cords From Reese Secure.

### Stackable & Convenient
### Multiple Uses
### Coated steel hooks won't bend, break, scratch or mark.

6 Piece Assorted Triple Strength Bungee Cords. Part Number 9429200. $3.80 each. Min Buy 30 each. Retail $9.99

6 Piece Assorted Fat Strap Bungee Cords. Part Number 9002900. $4.14 each. Min Buy 24 each. Retail $12.75

### PREPAID FREIGHT $99

### *Available while supplies last*

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-366-7512, Fax 1-630-916-0735, Email customerservice@comprehensive1.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee if you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-925-2526

Exhibit "9"

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|---|---|---|---|
| Phone: | | Pages: | 2 |
| Re: May Flip Mop Hot Buy | | E-Mail: customerservice@comprehensive1.com | |

## Harper Drop Ship Hot Buy for May!!!
## 2 in 1 Microfiber Flip Mop

### Harper "2 in 1" Microfiber Flip Mop #1182908

Product Features & Benefits:
* Perfect for Quick and Easy Daily Clean-up
* Household Cleaning Item for multi-use daily use
* Dry Microfiber Side is Best for Dusting
* Great for Picking Up Pet Hair & Ideal for Wood Floors and Tile
* Wet Side is Used for Mopping – Best with Spray On Cleaners
* Ideal for Smooth Surfaces
* Easy to Clean, Machine Washable
* Steel Handle with Hang Up Cap for Easy and Convenient Storage

** Minimum Purchase 18 units (master cartons of 6). With this you'll receive:

* Pre-paid Freight
* $4.95 Promo Cost…..Reg. Cost $6.60 = 25% Savings
* Over 50% Margin @ $9.99 MSRP
* Additional quantities of 6 (master carton = 6) can be added to 18 unit order and still qualify for prepaid freight.

## **Order Form To Follow**

Please call us at Comprehensive Marketing Inc. for any questions you may have. 1-800-366-7512;
Fax 1-630-916-0735, Email customerservice@comprehensive1.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-2526

# IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

Craftwood Lumber Company, *et al.*,

      Plaintiffs,

      v.

Horizon Global Corporation, *et al.*,

      Defendants.

Case No. **17 CH 1213**

**FILED**

AUG 3 1 2017

Erin Cartwright Weinstein
CIRCUIT CLERK

## Plaintiff's Protective Motion for Class Certification [735 ILCS 5/2-801]

NOW COME PLAINTIFFS, by and through their undersigned counsel, and hereby move for class certification pursuant to 745 ILCS 5/2-801, and in support of their motion, state as follows:

### Introduction

This class action seeks relief from Defendants Horizon Global Corporation ("HGC"), Horizon Global Americas Inc. ("HGA"), and Comprehensive Marketing, Inc. ("CMI"), for blasting junk fax advertisements in direct violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Several of Defendants' illegal junk faxes were sent to Plaintiffs Craftwood Lumber Company ("Craftwood"), Craftwood II, Inc., dba Bay Hardware ("Bay Hardware") and Craftwood III, Inc., dba Lunada Bay Hardware ("Lunada Bay").

This is the prototypical case for class treatment. Defendants engaged in a common course of conduct toward class members: Defendants operated a systemic mass fax-blasting campaign. All faxes are subject to the same federal statute. All faxes promote Defendants'

products and services and were sent in the same manner through a purchased fax application. All faxes violate the TCPA's mandatory opt-out notice requirements. All class members are entitled to the same small statutory damages and injunctive relief. Like the countless junk fax class actions that have been brought and certified before it, this case is well suited for class treatment. These common factors explain why Illinois state and federal courts have certified numerous junk fax actions over the past few years.[1]

### Plaintiffs' Motion Protects Against a Potential "Pick-Off" Attempt

Plaintiffs file this motion concurrently with their Complaint to protect against the now-common tactic by defendants to avoid class-wide accountability by attempting to "pick-off" the named plaintiff before a motion for class certification is filed. The Illinois Supreme Court has held that the defense pick-off tactic after filing of a motion for class certification is ineffective to moot a plaintiff's claims. *See Ballard RN Ctr., Inc. v. Kohll's Pharmacy and Homecare Inc.*, 48 N.E.3d 1060, 1067-1068 (Ill. 2015); *Barber v. Am. Airlines, Inc.*, 241 Ill. 2d 450, 456 (2011).[2]

---

[1] *E.g., Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014), *appeal dismissed*, 747 F.3d 489 (7th Cir. 2014); *Mussat v. Global Healthcare Res.*, No. 11 C 7035, 2013 WL 1087551 (N.D. Ill. Mar. 13, 2013); *Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013); *C.E. Design, Ltd. v. Letrix USA, Inc.*, No. 06 CH 26834, 2013 WL 5788356 (Ill. Cir. Aug. 30, 2013).

[2] Last year the United States Supreme Court held that an unaccepted offer of settlement does not moot a plaintiff's individual claims, and a court retained jurisdiction under Article III to decide the controversy. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670 (2016). At the same time, however, the Court posited a "hypothetical" situation, which it did not decide, whether "the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* at 672.

The Seventh Circuit has not yet addressed whether the hypothetical situation in *Campbell-Ewald* would moot the plaintiff's individual or class claims. But following *Campbell-Ewald*, at least one court in this district has held that a defendant's deposit of funds under authority of Rule 67 in an amount sufficient to compensate a TCPA plaintiff's claims in full was sufficient to moot the plaintiff's individual claims, and also moots the plaintiff's class claims.
(footnote continued)

Plaintiffs therefore bring this motion out of an abundance of caution to place themselves within this safe harbor. Plaintiffs do not seek to have this motion heard immediately; rather, this is a protective measure and Plaintiffs intend to amend the motion following discovery, which doubtless will unearth additional facts that will bolster the compelling case for certification. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) *overruled on other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) (encouraging plaintiffs to file the motion with the complaint, then seek discovery before the motion is heard); *Fulton Dental*, 2016 WL 4593825, at *13 ("[W]hen a plaintiff files a protective motion for class certification early in the litigation, the only purposes of which is to thwart potential picking off, the court will generally have to continue the motion pending discovery").

### The Federal Prohibition Against Junk Faxes

The TCPA makes it "unlawful" for any person to send an "unsolicited advertisement" by facsimile transmission. 47 U.S.C. § 227(b)(1)(C). An "advertisement" falls within the ambit of the TCPA if it is "any material advertising the commercial availability or quality of any property, goods, or services." *Id.*, § 227(a)(5). Facsimile advertisements are unsolicited if they are sent without the recipients' prior express permission.

Congress originally passed the anti-junk fax law in 1991 in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs., LLC*,

---

*See Fulton Dental, LLC v. Brisco*, No. 15 C 11038, 2016 WL 4593825 (N.D. Ill. Sept. 2, 2016) (Chang, J.), *appeal docketed*, No. 16-3594 (7th Cir. Sept. 29, 2016). The court also opined that the result would be different had the plaintiff previously filed a motion for class certification, because under Seventh Circuit precedents, action by the defendant to satisfy the plaintiff's claim does not moot the class case "so long as a motion for class certification has been made and not ruled on." *Id.* at *12 (quoting *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 546-47 (7th Cir. 2003)); *see also McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014).

132 S. Ct. 740, 744 (2012). Despite the law, American businesses and consumers continued to be "besieged" with junk faxes. Rules & Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44144, 44175 (July 25, 2003). Congress responded in 2005 by amending the TCPA through the Junk Fax Prevention Act, which added important consumer protections in the form of opt-out notice requirements.[3] To comply with these requirements, an advertiser must include a clear and conspicuous notice at the top or bottom of the first page of the advertisement. The notice must provide specific disclosures to recipients (which Defendants here failed to include). An advertiser's failure to comply with the opt-out notice requirements precludes it from asserting a three-prong affirmative defense based on an "established business relationship" with the recipient. *Id.,* § 227(a)(5), (b)(1)(C)(i)-(iii).

The TCPA establishes a minimum statutory damage of $500 per transmission—without the need to show any actual damage. 47 U.S.C. § 227(b)(3). A court also may increase statutory damages by up to three times if the defendant has violated the law either "knowingly" or "willfully." *Id.,* § 227(b)(3). The TCPA "was not designed solely to compensate each private injury caused by unsolicited fax advertisements, but also to address and deter the overall public harm caused by such conduct." *Texas v. Am. Blastfax, Inc.,* 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000). Here, class treatment will ensure that the injured class members may seek recovery under the TCPA and deter the public harm caused by Defendants' mass fax-blasting campaign.

### Defendants' Junk Fax Program

HGC groups its operating segments into reportable segments by the region in which sales

---

[3] The opt-out notice requirements are contained in 47 U.S.C. § 227 (b)(1)(C)(iii), (b)(2)(D) and (b)(E), and the FCC's regulations found at 47 C.F.R. § 64.1200(a)(4)(iii)-(vi) and its 2006 order. *See* Federal Communications Commission, Report and Order and Third Order on Reconsideration, 21 FCC Rcd. 3787 ¶ 26 (2006).

and manufacturing efforts are focused. HGC's reportable segment in the Americas is HGA. HGC and HGA are collectively referred to herein as "Horizon Global." Horizon Global is a designer, manufacturer, and distributor of a wide variety of towing, trailering, cargo management, and other related accessory products on a global basis, serving the automotive aftermarket, retail and original equipment channels. In connection with its Reese and Reese Secure brands, Horizon Global manufactures and sells tie downs to secure and protect cargo for travel. In connection with its Harper brand, Horizon Global manufactures and sells cleaning tools, including brooms, brushes, mops, buckets, dustpans, and squeegees.

CMI styles itself a "full service manufacturer's representative." On information and belief, within the past four years CMI has served as Horizon Global's authorized marketing agent to promote the sale of Horizon Global's products marketed under the Reese, Reese Secure, and Harper brands. Horizon Global and CMI, working within the course and scope of their joint marketing arrangement, have adopted and implemented an illegal junk fax advertising program to promote the sale of Horizon Global's property, goods, and services offered under the Reese, Reese Secure, and Harper brands. All faxes that are the subject of this lawsuit were designed as, intended as, and constituted advertisements under the TCPA within their four corners and as part of Defendants' overall, promotion, and sale of Defendants' property, goods, and services. These illegal junk faxes include, but are not limited to, Exhibits 1 through 11 to the Complaint.

Plaintiffs are informed and believe that Defendants transmitted their junk faxes without obtaining recipients' prior express invitation or permission, in direct violation of the TCPA and FCC regulations. Plaintiffs did not give Defendants prior express invitation or permission to send facsimile advertisements, including, but not limited to, Exhibits 1 through 11 to the Complaint. In the course of their illegal fax advertising campaigns Defendants also failed to

comply with the TCPA's mandatory opt-out notice requirements.

**The Proposed Plaintiff Class**

Plaintiffs seek to certify the following class:

The Plaintiff Class consists of all persons and entities that were subscribers of facsimile telephone numbers to which material that advertised the commercial availability or quality of Horizon Global property, goods, or services was sent via facsimile transmission on and after June 8, 2013, including, without limitation, the faxes attached as Exhibits 1 through 11 to this Complaint.[4]  Plaintiffs reserve the right to amend the class definition after completion of class certification discovery.

**Argument**

**I.   The Weight of Authority Strongly Favors Certification of Junk Fax Classes**

The Seventh Circuit has observed that "[c]lass certification is normal in litigation under §

227, because the main questions, such as whether a given fax is an advertisement, are common to

all recipients." *Turza*, 728 F.3d at 684; *see also CE Design Ltd. v. King Architectural Metals,*

*Inc.*, 271 F.R.D. 595, 600 (N.D. Ill. 2010) ("the weight of authority" supports certification of

junk fax class actions), *vacated and remanded on other grounds*, 637 F.3d 721 (7th Cir. 2011).

Because section 2-801 of the Illinois Code of Civil Procedure is patterned after Rule 23 of the

Federal Rules of Civil Procedure, federal decisions interpreting Rule 23 are persuasive authority

on questions of class certification in Illinois. *Mashal v. City of Chicago*, 981 N.Ed.2d 951, 959

(Ill. 2012); *Schlessinger v. Olsen*, 86 Ill. 2d 314, 320 (1981).  Courts in the Northern District of

---

[4]      Excluded from the Plaintiff Class are officers, directors, and employees of any Defendant or any affiliated company; legal representatives, attorneys, heirs, successors, or assigns of any Defendant, Defendants' officers and directors, or of any affiliated company; parent and subsidiary companies of any Defendant; any entity in which any of the foregoing persons have or have had a controlling interest; any members of the immediate families or the foregoing persons; any federal, state and/or local governments, governmental agencies, including the Federal Communications Commission; and attorneys of record in this action and their immediate family members.

Illinois clearly agree with the weight of authority supporting certification of junk fax cases,[5] and regularly and consistently certify junk fax classes.[6] Illinois state courts do so as well.[7]

The common thread in the case law is that mass fax-blasting violations are tailor-made to the class action remedy. As Judge Darrah aptly put the matter, "[c]lass actions were designed for these types of claims." *Group C Communications*, 2010 WL 744262, at *6. As one court explained a few months ago in certifying a class of other junk fax recipients, "[t]he 'most compelling rational for finding superiority in a class action' exists here, since this action is a 'negative value suit'—where the value of claims is so insubstantial that individual lawsuits would be unlikely or unfeasible." *Backer Law Firm v. Costco Wholesale Corp.*, No. 15-0327-CV-W-SRB, __F.R.D. __, 2017 WL 1907764, at *6 (W.D. Mo. Apr. 27, 2017). A legion of federal courts—too numerous to cite them all—agree. *See, e.g., Robert L. Meinders D.C., Ltd. v.*

---

[5] The Eighth Circuit recently held that denying certification of a class that meets the commonality and predominance requirements of Rule 23(a)(2) and (b)(3) is an abuse of discretion. *See Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, Case No. 15-1317, 2016 WL 1743037, at *5 (8th Cir. May 3, 2016).

[6] *E.g., Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014); *Mussat v. Global Healthcare Res.*, No. 11 C 7035, 2013 WL 1087551 (N.D. Ill. Mar. 13, 2013); *Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013), and 2013 WL 626981 (N.D. Ill. Feb. 20, 2013); *Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, No. 09 C 3963, 2012 WL 3961307 (N.D. Ill. Sept. 10, 2012); *Bridgeview Health Care Ctr., Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-CV-5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010); *Garrett v. Ragle Dental Lab., Inc.*, No. 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010).

[7] *E.g., C.E. Design, Ltd. v. Letrix USA, Inc.*, No. 06 CH 26834, 2013 WL 5788356 (Ill. Cir. Aug. 30, 2013); *C.E. Design, Ltd. v. C&T Pizza, Inc.*, No. 06 CH 27638, 2013 WL 1783623 (Ill. Cir. Apr. 4, 2013); *Loncarevic & Assocs., Inc. v. Stanley Foam Corp.*, No. 09 CH 15403, 2013 WL 1783625 (Ill. Cir. Apr. 4, 2013); *Uesco v. Poolman*, No. 09 CH 16028, 2011 WL 10798570 (Ill. Cir. Aug. 10, 2011); *G.M. Sign, Inc. v. 400 Freight Servs., Inc.*, No. 07 CH 2727, 2010 TCPA Rep. 1934 (Ill. Cir. Jan. 7, 2010); *Brill v. Becktold Enters., Inc.*, No. 06 CH 1520, 2009 WL 9152830 (Ill. Cir. Jan. 16, 2009); *Overlord Ent., Inc. v. Wheaton-Winfield Dental Assocs., Ltd.*, No. 04 CH 1613, 2006 WL 4591049 (Ill. Cir. June 9, 2006).

*Emery Wilson Corp.*, No. 14-CV-596-SMY-SCW, 2016 WL 3402621, at \*7 (S.D. Ill. June 21, 2016); *APB Assocs. v. Bronco's Saloon, Inc.*, No. 09-14959, 2016 WL 1394646, at \*19 (E.D. Mich. Apr. 7, 2016); *Critchfield Physical Therapy*, 263 P.3d at 778-79; *Vandervort v. Balboa Cap. Corp.*, 287 F.R.D. 554, 561 (C.D. Cal. 2012); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012), *aff'd*, 704 F.3d 489 (7th Cir. 2013).

## II.    The Case Satisfies All Requirements for Class Certification

Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, prescribes four requirements for class *certification*: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect class interests; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.  The proposed Plaintiff Class easily satisfies all section 2-801 elements.

### A.  Joinder of All Members Is Impracticable

The defined class includes the subscribers of facsimile telephone numbers to which Defendants successfully sent fax advertisements during the class period.  This group is numerous enough for class certification.

In assessing whether a proposed class meets the numerosity requirement, the court may "make common-sense assumptions that support a finding of numerosity." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996).  Relevant factors include the number of proposed class members, their geographic dispersion, the ability of individual members to bring suit on their own, judicial economy, and the inconvenience of trying a multitude of individual lawsuits. *Id.*; *see also Fields v. Maram*, No. 04 C 0174, 2004 WL 1879997, at \*3 (N.D. Ill. Aug. 17, 2004).  A

plaintiff need not show the precise number of members in the class; no magical number is

necessary. *Wood River Area Dev. Corp. v. Germania Fed. Savs. & Loan Ass'n,* 198 Ill. App. 3d

445, 449-50 (5th Dist.1990).[8] Although there is no "bright-line" test for numerosity, a proposed

class of at least forty members satisfies the numerosity requirement. *Id.* at 450.

Indeed, "[a]lthough there is no 'bright line' test for numerosity, a class of forty is

generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002).

General knowledge and common-sense support Plaintiffs' allegation of numerosity. The junk

faxes were sent to Plaintiffs on separate dates in a relatively short period suggests widespread

distribution to what is likely thousands of members of the Plaintiff Class. *See Sadowski v. Med1*

*Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *3 (N.D. Ill. May 27, 2008). Experience of

Plaintiffs' counsel supports the same conclusion. (Declaration of Darryl Cordero ("Cordero

Decl.") ¶ 13.)

### B. Common Questions of Fact and Law Predominate in this Action

The second section 2-801 element is that common "questions of fact or law" predominate

over individual questions. A single common question of either fact or law is enough. *Miner v.*

*The Gillette Co.*, 87 Ill. 2d 7, 17 (1981). Generally, when all class members have been aggrieved

by the same or similar misconduct, the commonality requirement is satisfied. *P.J.'s Concrete*

*Pumping Serv. Inc. v. Nextel W. Corp.*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "Once this

basic determination has been made, the fact that there may be individual questions…will not

defeat the predominating common question." *Miner*, 87 Ill. 2d at 19.

The threshold for this element is low: "[T]he low commonality hurdle is easily

---

[8] Courts have held that a TCPA plaintiff need not identify the specific fax numbers to which faxes were sent in order to have a class certified. *Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008).

surmounted" because the "requirement does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs." *Kaufman v. American Express Travel Related Servs. Co.*, 264 F.R.D. 438, 442 (N.D. Ill. 2009) (internal quotes omitted).

This case easily satisfies the minimal standard. All class member claims arise from the same conduct. Faxes appear to have been sent in the exact same manner to members of the Plaintiff Class. Where, as here, the defendant has acted in the same basic way to all members of a class, common questions predominate. *Martin v. Heinold Commodities, Inc.*, 139 Ill. App. 3d 1049, 1052 (1st Dist. 1985), *aff'd in part, rev'd in part on other grounds*, 117 Ill. 2d 67 (1987); *see also Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 446 (E.D. Mich. 2015) (common issues predominate because all class members' claims are brought under the TCPA and based on the same legal theories); *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008) (mass fax broadcasts are a standardized course of conduct).

The TCPA/FCC regulations provide a basis for all class claims. *See Chapman*, 2014 WL 540250, at *11 ("Whether the fax broadcast violated the TCPA is an issue common to the class"). Under the TCPA all members are entitled to same exact relief. Because the successful adjudication of the class representative's claim will establish the right of recovery for all other class members, common questions predominate. *Clark v. TAP Pharm. Prods., Inc.*, 343 Ill. App. 3d 538, 548 (5th Dist. 2003); *Gordon v. Boden*, 224 Ill. App. 3d 195, 201 (1st Dist. 1991).

This case also contains many common legal issues determinable on a class basis: (1) Are the faxes "advertisements" under the TCPA?; (2) Who was the "sender" of the faxes?; (3) Did Defendants include in their faxes "opt-out" notices that complied with the TCPA?; (4) Did Defendants commit "knowing" or "willful" violations of the TCPA?; and (5) Is the injunctive relief requested in the Complaint warranted? These common questions of both fact and law

easily satisfy section 2-801(2).

### C. Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Class

This case also satisfies the adequate representation requirement. The purpose of this requirement "is merely to insure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chartered v. Hertz Corp.,* 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988). The class representative's claim need not be identical to the other class members' claims; rather, it is enough that the representative not seek relief antagonistic to other class members. *Id.; see also Steinberg v. Chicago Med. Sch.,* 69 Ill. 2d 320, 338 (1977). The adequacy requirements are modest—one decision described them as "quite low."[9]

Plaintiffs will adequately represent and protect the interests of the class. (Cordero Decl. ¶¶ 10-11.) Here, Plaintiffs and the proposed Plaintiff Class have the same legal claims based on the same statutes and/or regulations and are entitled to the same relief. There is a perfect nexus between Plaintiffs' claims and those of the other class members; they share the interest of proving that Defendants violated the TCPA by sending them unsolicited faxes.

Craftwood's prosecution of this case will be overseen by David Brunjes, an experienced businessman who has pursued this litigation for reasons fully consistent with the policies behind the TCPA. Mr. Brunjes was certified as a public accountant in 1976. (Declaration of David Brunjes ("Brunjes Decl.") ¶ 3.) From 1979 to 1988, Mr. Brunjes worked as a Corporate Audit

---

[9] *In re AEP ERISA Litig.,* No. C2-03-67, 2008 WL 4210352, at *2 (S.D. Ohio Sept. 8, 2008); *see also Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366 (1966) (plaintiff was adequate despite a limited understanding of English, little knowledge of the lawsuit, and did not know the nature of the alleged misconduct); *In re Ocean Bank,* 06 C 3515, 2007 WL 1063042, at *8 (N.D. Ill. Apr. 9, 2007) ("[T]he standard for serving as class representative is not particularly demanding.").

Department Manager and then as Director of Sales & Marketing at a publicly-listed company. (*Id.*) From 1988 to the present, he has worked at Craftwood. (*Id.*)

Mr. Brunjes is committed to protecting the Plaintiff Class's interests. He believes junk faxes are a vexing problem for businesses and consumers. (Brunjes Decl. ¶ 4.) Mr. Brunjes has filed more than 280 complaints with the Federal Communications Commission ("FCC") regarding junk faxes sent to Craftwood. (Brunjes Decl. ¶ 7.) Frustrated with FCC inaction on these complaints, Mr. Brunjes is convinced that the only way to stop junk faxes is by legal action to enforce the anti-junk fax laws. (Brunjes Decl. ¶ 7.) He understands the responsibilities of a class representative and is prepared to discharge those responsibilities here. (Brunjes Decl. ¶ 9.) Indeed, Craftwood and Bay Hardware separately have each successfully prosecuted another class action under the TCPA. (Cordero Decl. ¶¶ 10-11.)

Moreover, Plaintiffs' attorneys are highly experienced in class actions and have handled numerous TCPA class actions. Lead attorney Darryl Cordero has successfully prosecuted numerous junk fax cases over the past decade, including the record $40 million Interline Brands recovery in this district. (Cordero Decl. ¶ 7.) He and his colleagues have the experience, knowledge and resources to adequately represent and protect the interests of this putative class. (*Id.* ¶¶ 7-10, 12.)

### D. A Class Action Provides the Best Means for Fair and Efficient Adjudication of Class Members' Claims

Where, as here, the first three requirements of section 2-801 have been satisfied, it is "manifest that the final requirement of the statute [also] is fulfilled." *Steinberg*, 69 Ill. 2d at 339; *see also P.J.'s Concrete Pumping Service*, 345 Ill. App. 3d at 1004; *Clark*, 343 Ill. App. 3d at 552. In assessing the fourth requirement of section 2-801, the court may also consider "whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to

- 12 -

obtain." *Gordon*, 224 Ill. App. 3d at 203. In addition, class treatment is found appropriate when it provides the only practical means to provide redress to all class members. *Id.*

The strong weight of authority favoring certification of TCPA classes reflects a straightforward application of the policy objective behind the class action—to encourage individuals, who may otherwise lack incentive to file individual actions, to join with others to vindicate their rights. *Hansberry v. Lee*, 311 U.S. 32, 41 (1940). As the Supreme Court stressed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Pdcts., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Illinois federal courts have held that "proceeding as a class is a superior method of adjudicating TCPA violations..." *Mussat*, 2013 WL 1087551, at *7; *see also Emery*, 2016 WL 3402621, at *7 ("deciding each [junk fax] claim separately would be an extremely inefficient use of both judicial and party resources"). Mass fax-blasting programs impact literally thousands. As one court stressed in certifying another TCPA class, "resolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources." *Hinman*, 545 F. Supp. 2d at 807. Class prosecution is "more likely to accomplish the TCPA's purpose of eliminating a 'scourge on our society' than would restricting TCPA enforcement to individual actions, in the face of which junk faxers might consider a few thousand dollars' worth of enforcement actions to be a fair cost for intrusive and unwanted advertising directly into people's homes or offices." *Jay Clogg Realty Group, Inc. v. Burger King Corp.*, 298 F.R.D. 304, 310 (D. Md. 2014); *see also Costco Wholesale*, 2017 WL 1907764,

at *6; *Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.*, No. 12-CV-2066 (PJS/HB), ___F.

Supp. 3d ___, 2017 WL 1483330, at *7 (D. Minn. Apr. 25, 2017).

      Here, the economics of litigation make class adjudication the ***only*** practical means to hold

Defendants accountable for their violations of law. Because the TCPA lacks an attorneys' fees

clause, individual litigants would sustain legal fees far exceeding their expected recovery at only

$500 per fax transmission or, even less likely, find lawyers willing to prosecute individual claims

on a contingency basis. Only by aggregating their claims can businesses impacted by

Defendants' junk faxes effectively challenge Defendants' systematic violations of federal law.

*See Mussat*, 2013 WL 1087551, at *7; *see also Mims v. Arrow Fin. Servs.*, 132 S. Ct. 740, 753,

181 L. Ed. 2d 881 (2012) ("How likely is it that a party would bring a $500 claim in, or remove a

$500 claim to, federal court?").

      Private class actions are vital to effective enforcement of the law. As the Seventh Circuit

recently stressed, "A class action, like litigation in general, has a deterrent as well as a

compensatory objective." *Hughes v. Kore of Indiana Enters., Inc.*, 731 F.3d 672, 677 (7th Cir.

2013). The FCC, with its limited resources, has been unable to staunch the tide of junk faxes, as

demonstrated by Plaintiffs' own experience with Defendants and other advertisers. (*See* Brunjes

Decl. ¶ 7.) The act fixes a form of bounty system, designed to encourage victims to enforce the

law. *See Turza*, 728 F.3d at 688; *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 665 (7th Cir.

2001). But if "only a small number of plaintiffs found it worth their while to bring suit or were

aware of their rights under the TCPA, this small turnout would serve only to frustrate the intent

of the TCPA and to protect junk fax advertisers from liability." *Critchfield*, 263 P.3d at 780.

      Certification would also promote the public interest, as "[a] class action serves to educate

individuals about their rights as well as protect those rights." *ESI Ergonomic Solutions, LLC v.*

*United Artists Theatre Cir., Inc.*, 50 P.3d 844, 848 (Ariz. Ct. App. 2002) (certifying TCPA class). Indeed, individual lawsuits often are not brought because victims are unaware of their rights under federal law. *See Mace*, 109 F.3d at 344. This objective is particularly important here because Defendants violated the law's requirement that it inform recipients of their legal right to stop junk faxes. Denying recipients the opportunity to vindicate their rights class-wide basis would—perversely—reward Defendants for their failure to inform victims of their rights.

### Conclusion

This is the paradigm case for class treatment. The proposed class is numerous with claims too small to warrant individual prosecution. The common questions of fact and law are case- dispositive and they predominate. Plaintiffs' claims are identical to those of other class members and Plaintiffs will fulfill their duties as class representatives. Plaintiffs have retained counsel well qualified to represent the class. As a practical matter, this action is the only way members will ever obtain relief. Judicial economy and uniformity will be well-served by certifying this class.

DATED: August 31, 2017     TROBE, BABOWICE & ASSOCIATES, LLC

Peter Trobe, Atty. No. 2857863
Michael D. Furlong. Atty. No. 6289523
404 West Water Street
Waukegan, Illinois 60085
Telephone: (847) 625-8700

Attorneys for Plaintiffs Craftwood Lumber Company,
Craftwood II, Inc., dba Bay Hardware, and Craftwood III,
Inc., dba Lunada Bay Hardware, on behalf of themselves and
all others similarly situated

# IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS
# COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Craftwood Lumber Company, *et al.*, | Case No. |
| Plaintiffs, | |
| v. | |
| Horizon Global Corporation, *et al.*, | |
| Defendants. | |

## Affidavit of C. Darryl Cordero

I, C. Darryl Cordero, being first duly sworn and under oath, state the following to be true of my own personal knowledge, information and belief:

1.      I am an attorney duly licensed to practice in the state of California, and partner of the law firm Payne & Fears LLP. I intend to file an application for admission pro hac vice in this Court after the filing of Plaintiffs' Complaint and Protective Motion for Class Certification. I seek to represent proposed plaintiffs and proposed class representatives Craftwood Lumber Company, Craftwood II, Inc., dba Bay Hardware ("Bay Hardware") and Craftwood III, Inc., dba Lunada Bay Hardware ("Lunada Bay") and the putative class in this action (collectively, "Plaintiffs"), in this action.  (I will be

- 1 -

filing an application for admission *pro hac vice* forthwith.)  The facts stated in this declaration are of my own personal knowledge and, if called and sworn as a witness, I could and would competently testify with respect thereto.  This declaration is submitted in support of Plaintiffs' Protective Motion for Class Certification.

2.      This declaration explains why we have filed an early motion for class certification, addresses my background and experience handling complex litigation, including class actions for violations of the federal anti-junk fax law, and my commitment to prosecute this case vigorously on behalf of the proposed class.

3.      The purpose of Plaintiffs' motion is to protect against a potential pick-off attempt by the Defendants in an effort to avoid class-wide accountability.  The Illinois Supreme Court has held that defense pick-off attempts are ineffective to moot a plaintiff's claims if the plaintiff has filed a motion for class certification.  *Ballard RN Ctr., Inc. v. Kohll's Pharmacy and Homecare Inc.*, 48 N.E.3d 1060, 1067-1068 (Ill. 2015).  We have therefore filed this motion out of an abundance of caution to place Plaintiff within this safe harbor.   I recognize that discovery is necessary to have a fully-developed record for an informed class certification decision, and for that reason ask the Court to continue hearing and further briefing on the motion following a period of discovery.

### Legal Background and Experience in Junk Fax Class Actions

4.     I am attorney with over 34 years' litigation experience. After graduating from Harvard Law School in 1981 I served as law clerk to the Hon. Harry Lee Hudspeth, United States District Judge for the Western District of Texas. After completing my clerkship I was admitted to practice in the State of California in October 1983. I am a member of the general bar of this Court. I am also admitted to practice before the United States Supreme Court, the United States Court of Appeals, Second Circuit, the United States Court of Appeals, Ninth Circuit, all federal district courts in the state of California, and the United States District Court for the Eastern District of Wisconsin. I have been lead counsel in complex litigation in federal and state courts throughout the country and coordinating counsel for reinsurance litigation in Bermuda.

5.     I am a business litigator. My practice concentrates on complex, high-stakes litigation, and is national in scope. I have represented clients in litigated matters in California, Florida, Illinois, Missouri, New Mexico, New York, New Jersey, and Wisconsin. I also have represented clients in connection with legal disputes in courts outside the United States. I have considerable experience in antitrust, RICO, health care, and complex insurance disputes of all types (insurance coverage, insurance program disputes, reinsurance, reinsurance brokerage, and managing general agent issues).

6.    For the past 25 years I have served as counsel in class action litigation over a wide range of subject matters, including self-funded liability insurance programs, Medicaid reimbursement, and consumer cases. Since 2006 I have served as lead counsel in several major actions for violation of the federal anti-junk fax law, the Telephone Consumer Protection Act of 1991, and the regulations promulgated under that act by the Federal Communications Commission. In the course of my work in TCPA cases over this time, I have read virtually every FCC publication pertaining to junk faxes and have read literally hundreds of decisions by courts throughout the country in cases involving illegal junk faxes.

7.    Among other cases, I have served as lead class counsel in the following TCPA/junk fax matters:

a.    Between 2006 and 2009 I prosecuted an action involving nearly 100,000 class members against "Quiznos" entities and Premier Global Services. (*Gibson & Co. Ins. Brokers v. Quiznos Corp., et al.*, U.S. Dist. Ct., Cent. Dist. Cal., No. CV06-5849 PSG.) The *Quiznos* case was settled on a class-wide, claims-made basis (while motion for class certification was pending) through the payment of over $7.5 million by the defendants. Class members received $450 per fax, net of attorneys' fees and class notice and administration costs. The class settlement was approved by the Hon. Philip Gutierrez in February 2009.

b.    Between 2010 and 2013 I prosecuted another case involving over 600,000 transmissions of 149 junk faxes to 24,000 class members in Los Angeles Superior Court. (*Universal Health Resources v. MDC Acquisition Co., et al.*, No. BC 415244.) In February and March 2012, I negotiated a mediated settlement under which the defendants paid $7.2 million to the class. (Settlement was later approved by the Hon. John S. Wylie of the superior court's complex case unit.)

c.    Between 2012 and 2015 I prosecuted a TCPA class case on Bay Hardware's behalf against Tomy International in the Central District of California. (*Craftwood II, Inc., dba Bay Hardware, v. Tomy Int'l, Inc.*, No. SACV12-1710DOC(ANx), U.S. Dist. Ct., Cent. Dist. Cal.) Horizon attorney Bart Murphy represented the defendant in this matter. Two years ago we negotiated a $10 million settlement, which was approved by the Hon. David O. Carter on March 3, 2015. Under the settlement, class members received $335 per junk fax after payment of attorneys' fees and all costs of notice and claim administration.

d.    I served as lead counsel for Plaintiff Craftwood Lumber Company and a large class of junk fax recipients in the Interline Brands class litigation in the Northern District of Illinois. (*Craftwood Lumber Co. v. Interline Brands*, No. 1:1-cv-04462.) Horizon attorney Bart Murphy represented the defendants in this matter. The parties negotiated a $40 million settlement of this matter, which I believe was the largest dollar recovery in any junk fax case in the history of the TCPA. On March 23, 2015, the

settlement was granted final approval by the Hon. Amy J. St. Eve.

   e.    In 2014 I negotiated a $15 million class recovery in the PharMerica junk fax class action (*Pines Nursing Home (77) Inc. v. PharMerica Corp.*, No. 1:13-23924-CIV-MOORE/TORRES). The settlement received final approval from the Hon. K. Michael Moore, Chief Judge of the Southern District of Florida, in November 2015.

   f.    Commencing in 2014 I have represented Plaintiff Craftwood Lumber Company in prosecuting TCPA/junk fax claims against Senco Brands, Inc., in the Northern District of Illinois (*Craftwood Lumber Co. v. Senco Brands, Inc.*, Case No. 1:14-cv-06866). I was appointed lead counsel for the class in this matter. On June 7, 2017, the Hon. Robert J. Blakey granted final approval to the $3 million recovery for the class of recipients of Senco junk faxes. Judge Blakey also ordered payment of $35,430 to Craftwood in recognition of its service to the class and stalwart prosecution in the face of multiple defense attempts to pick off Craftwood with individual settlement offers.

   g.    I am currently serving as lead counsel in litigation challenging "Polaris Group" junk faxes in the United States District Court for the Eastern District of California. (*R. Fellen, Inc. v. RehabCare Group, Inc.*, No. 1:14-cv-02081-DAD-BAM.) On April 19, 2017, the court (Hon. Dale A. Drozd) entered an order granting preliminary approval of a $25 million class-wide settlement I negotiated late last year. I believe based on my experience handling TCPA matters nationwide that RehabCare is the third

- 6 -

largest junk fax recovery in the history of the TCPA.

8.     I have also prosecuted other types of class actions.  In the late 1980s, I represented a group of California hospitals that challenged Medi-Cal reimbursement practices of the State Department of Health Services (*Goleta Valley Comm. Hosp., et al., v. State Dep't of Health Services*).  In that case, I obtained substantial relief for the class following a favorable summary judgment ruling.

9.     Between 1994 and 2001 I was lead court-appointed counsel for a class of over 600 California hospitals in the United States District Court for the Eastern District of California (*Loma Linda Univ. Med. Ctr., et al. v. Farmers Group, Inc., et al.*, No. CIV-94-681-WBS).  The hospitals challenged Farmers Group's accountings for a California hospital self-insurance program in which, the hospitals contended, Farmers had improperly retained program surplus.  In September 2000, following a phase I trial and arbitration hearing, Chief Judge William B. Shubb gave final approval to a $51 million common-fund recovery I had negotiated for the hospital class.

## Plaintiffs' Prior Service as Class Representative

10.     I worked closely with Craftwood Lumber Company and its president, David Brunjes, in the above-referenced *Interline Brands* and *Senco* class cases.  In each matter, the court appointed Craftwood class representative and, in my opinion, Craftwood

fully performed the obligations of a class representative. In each case Craftwood rejected defense attempts to pick it off with individual settlement offers. No class member objected to either settlement and in each case only a handful of class members requested exclusion. This is reflected in the incentive awards ordered by the respective courts. In addition to the *Senco* incentive award discussed earlier, on March 23, 2015, the Honorable Amy J. St. Eve of the Northern District of Illinois entered an order awarding Craftwood $25,000, the full amount requested, in the *Interline Brands* case.

11.    I also worked closely with Bay Hardware and its manager, Diana Newton, on the above-referenced *TOMY International* class case. The court appointed Bay Hardware class representative for the class of TOMY fax advertising recipients. I believe that Bay Hardware fully performed the obligations of the class representative in that case. Among other things, Bay Hardware refused an attempt by TOMY attorney Bart Murphy to pick it off with an individual settlement offer. No class member objected to the settlement, and only a handful of class members requested exclusion. On March 3, 2015, Judge David O. Carter of the Central District of California entered an order awarding Bay Hardware an incentive award of $15,000, the full amount requested, in recognition of its initiative and efforts in prosecuting the case on the class's behalf.

### Commitment to the Case

12.    Based on the above, I believe that I have the experience, knowledge and

resources (including through my co-counsel) available to me to adequately represent and protect the interests of the putative class in this case. My firm, Payne & Fears LLP, is a firm of about 55 attorneys in seven offices. The firm and I are committed to prosecute this case diligently on behalf of the putative class, as we have in numerous other class prosecutions under the TCPA.

13.    In my experience, copies of fax advertisements received and retained by the class representative are always the "tip of the iceberg" in terms of the number of fax advertisements sent by the defendant advertiser during the class period. Examples of this include the following cases (all referenced earlier in this declaration): In the *Quiznos* matter, the named plaintiff received two transmissions of only one junk fax, but discovery revealed that the defendants sent more than 125,000 transmissions of the same junk fax to about 100,000 recipients. In *Universal Health Resources*, the named plaintiff had retained only 12 copies of fax advertisements. Through discovery, we ascertained that one or more of the defendants sent 149 advertisements during the class period in over 600,000 facsimile transmissions and that the named plaintiff had been sent over 90 fax transmissions. In the *TOMY* case, Bay Hardware had retained only one copy of a fax advertisement. Through discovery, however, we ascertained that 159 fax advertisements had been sent during the class period in at least 113,000 facsimile transmissions. In the *Interline Brands* case, only two junk faxes were sent to Craftwood Lumber Company. Through discovery, however, we ascertained that Interline sent more than 750,000 transmissions of over 1,500 junk fax advertising campaigns during the class period.

**Pre-Suit Research Regarding Defendants**

14.     In preparing for this protective class certification motion, members of my firm performed extensive pre-suit research regarding defendants Horizon Global Corporation, Horizon Global Americas Inc., and Comprehensive Marketing, Inc.  This research yielded information about the company's national reach, its products, and its distribution network.


I hereby declare under penalty of perjury under the laws of the state of Illinois that the foregoing is true and correct.  Executed on August 28, 2017, at Manhattan Beach, California.


_____
C. Darryl Cordero

- 10 -

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not to the truthfulness, accuracy, or validity of that document

State of California )
)
County of Los Angeles )

Subscribed and sworn to (or affirmed) before me on this 28 day of August 2017 by
Charles D. Cordero , proved to me on the

basis of satisfactory evidence to be the person who appeared before me.

Signature of Notary Public

RAMON GASTELUM, JR.
COMM. #2207704
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires 07/29/2021

IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Craftwood Lumber Company, *et al.*, | Case No. |
| Plaintiffs, | |
| v. | |
| Horizon Global Corporation, *et al.*, | |
| Defendants. | |

### Affidavit of David W. Brunjes

I, David W. Brunjes, being first duly sworn and under oath, state the following to be true of my own personal knowledge, information and belief:

1.     I am President of Craftwood Lumber Company, one of the named plaintiffs in this action.  Craftwood, an Illinois corporation, does business under the name "Craftwood Lumber & Hardware" from its Highland Park store.  Craftwood is one of the larger hardware stores in Illinois, and serves primarily the North Shore area.  I, together with my wife, operate Craftwood.

2.     I attended the University of Illinois, School of Business Administration, and majored in accountancy.  I received my Bachelor of Arts degree from that institution in 1976.  In 1976, I was certified as a public accountant in Illinois.  I retain my membership as a certified public accountant, but I currently do not practice public

accounting.

3.   From 1976 to 1979, I worked in the audit department of Coopers & Lybrand.  From 1979 to 1988, I worked for Mark Controls Corporation, a publicly listed company, and several of its units, starting as Corporate Audit Department Manager and concluding my employment as Director of Sales & Marketing (FlowSeal, a unit of Mark Control Corporation).  From 1988 to the present, I have worked at Craftwood.

4.   I caused Craftwood to bring this lawsuit and request appointment as a class representative because of our desire to stop, as much as possible, unwanted junk faxes and to obtain monetary and other relief for the class.  I believe junk faxes are a vexing problem for businesses and consumers.  Junk faxes disrupt our business operations, require someone to go through them to dispense with them, force us to consume paper, toner, and electricity against our wishes, and cause wear and tear on our business equipment.

5.   For many years Craftwood has been the subscriber of the telephone number (847) 831-2805.  Throughout this time, that telephone number has been connected to a fax machine located in our office.

6.   Craftwood has received at this telephone number at least two unsolicited junk faxes advertising Defendants' products and services.  Craftwood has retained copies

-2-

of these faxes. True and correct copies of these faxes, which Craftwood received on or about July 19, 2016, and May 4, 2017, are attached hereto as Exhibits 1 through 2. I believe that Craftwood received other junk faxes from Defendants, but did not retain copies. To the best of my knowledge, information and belief, after making reasonable inquiry, Craftwood did not give any Defendant prior express permission to send any facsimile advertisements.

7.     I have responsibility for dealing with junk faxes received by Craftwood. I have filed more than 280 complaints with the Federal Communications Commission regarding junk faxes sent to Craftwood. To my knowledge the FCC has not taken any action in connection with any of Craftwood's complaints.

8.     My experience has convinced me that the only way to stop junk faxes is through legal action to enforce the anti-junk fax laws. This is why Craftwood has proudly assumed the role and responsibilities of class representative in other private actions to enforce the TCPA's prohibition of junk faxes. Craftwood served as court-appointed class representative in the Interline Brands case in the Northern District of Illinois, in which we obtained a record $40 million recovery for the class of Interline junk fax recipients. Craftwood also recently served as named plaintiff and class representative in the Senco Brands case, also in the Northern District of Illinois, in which we obtained a $3 million recovery for the class of Senco junk fax recipients. In both cases, Craftwood rejected individual settlement offers from the defendants, and instead prosecuted the

-3-

cases vigorously on behalf of the classes.

9.      I recognize Craftwood's responsibilities as a class representative to fairly and adequately protect the interests of the class members in the case. I am prepared to discharge those responsibilities in the interest of the proposed class. I am committed to keeping abreast of developments in the case and to exercise my independent judgment in order to discharge Craftwood's duties as class representative. Craftwood also will not place its interests ahead of the interests of the class members. I know of no antagonistic or conflicting interests between Craftwood and class members.

10.     Neither Craftwood nor I have been provided any financial consideration to prosecute this case, nor have we been promised any such consideration. I understand that if there is a successful class recovery Craftwood, as class representative, may request an incentive award, but that any incentive award is entirely discretionary with the court. I understand and accept that, aside from any incentive award and any recovery shared with members of the class, Craftwood cannot receive any additional award, monies, or other benefits in connection with the case. I also understand that if there is a successful class recovery, Plaintiffs' attorneys will ask the Court for payment of their fees and costs incurred in rendering services to Plaintiffs and the class.

-4-

I declare under penalty of perjury under the laws of the state of Illinois that the foregoing is true and correct. Executed this 22 day of August 2017 at Highland Park, Illinois.

_____
David Brunjes

-5-

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not to the truthfulness, accuracy, or validity of that document

State of Illinois )

County of Lake )

Subscribed and sworn to (or affirmed) before me on this 30th day of August 2017 by

David W Brunas , proved to me on the

basis of satisfactory evidence to be the person who appeared before me.

"OFFICIAL SEAL"
DEBORAH A EVANS
Notary Public, State of Illinois
My Commission Expires 3/26/2018

_____
Signature of Notary Public

-6-

**Exhibit "1"**

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive
# Marketing Inc.

| To: Store Manager/Owner | From: Comprehensive Marketing Inc. |
|---|---|
| Phone: | Pages: 2 |
| Re: Reese Secure Camo Ratchet Tie Down | E-Mail: |



Camping season is in full swing and hunting season is just around the corner.
Reese Secure is offering a drop ship promotion end cap on Camouflage
ratcheting tie downs.

See following page for details on how to take advantage of this promotion. Only
available while supplies last!



- 8 Foot Durable Webbing
- Stamped Steel Handle
- Vinyl Coated Steel Hooks
- Part Number 9485500
- Bulk Packaging

**$1.98 EACH! PREPAID FREIGHT ON 50 PCS.
ORDER IN MULTIPLES OF 10.**

Please call us at Comprehensive Marketing Inc. for pricing, availability, or for any questions you may have. 1-800-
366-7512, FAX 1-630-916-0735.

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee.
If you have received this message in error, or if the recipient of this communication does not desire to receive
future communications from this sender. The recipient must notify the sender of this same with a return fax to
630-916-0735 or call Toll Free 1-50-336-2526.



Drop Ship HOT BUY!
Perfect End Cap
Promotion For Hunting
Season

Cost $1.98 ea
Min Purchase 50pcs Prepaid!

While Supplies Last- Minimum Order 50 pcs, Order in Multiples of 10.

Camo Ratchet Tie Down

**Exhibit "2"**

05-04-2017 12:11          630-916-0735          1-847-831-2805          1/2

200 W. 22nd Street
Suite #255
Lombard, IL 60148
Phone: 800-366-7512

# Comprehensive Marketing Inc.

| To: | Store Manager/Owner | From: | Comprehensive Marketing Inc. |
|-----|---------------------|-------|------------------------------|
| Phone: | | Pages: 2 | |
| Re: May Flip Mop Hot Buy | | E-Mail: customerservice@comprehensive1.com | |

## Harper Drop Ship Hot Buy for May!!!
## 2 in 1 Microfiber Flip Mop

### Harper "2 in 1" Microfiber Flip Mop #1182908

**Product Features & Benefits:**
• Perfect for Quick and Easy Daily Clean-up
• Household Cleaning Item for multi-use daily use
• Dry Microfiber Side is Best for Dusting
• Great for Picking Up Pet Hair & Ideal for Wood Floors and Tile
• Wet Side is Used for Mopping – Best with Spray On Cleaners
• Ideal for Smooth Surfaces
• Easy to Clean, Machine Washable
• Steel Handle with Hang Up Cap for Easy and Convenient Storage

**\*\* Minimum Purchase 18 units (master cartons of 6), With this you'll receive:**

• Pre-paid Freight
• $4.95 Promo Cost.....Reg. Cost $6.60 = 25% Savings
• Over 50% Margin @ $9.99 MSRP
• Additional quantities of 6 (master carton = 6) can be added to 18 unit order and still qualify for prepaid freight.

### **\*\*Order Form To Follow\*\***

Please call us at Comprehensive Marketing Inc. for any questions you may have. 1-800-366-7512, Fax 1-630-916-0735, Email customerservice@comprehensive1.com

Confidentiality Notice
The information in this facsimile message is privileged and confidential information, intended for the addressee. If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender. The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-2526





# Harper Drop Ship Hot Buy for May!!!
## 2 in 1 Microfiber Flip Mop

Harper "2 in 1" Microfiber Flip Mop #1182908

**Product Features & Benefits:**

- Perfect for Quick and Easy Daily Clean-up
- Household Cleaning Item for multi-use daily use
- Dry Microfiber Side is Best for Dusting
  - Great for Picking Up Pet Hair & Ideal for Wood Floors and Tile
- Wet Side is Used for Mopping – Best with Spray On Cleaners
  - Ideal for Smooth Surfaces
- Easy to Clean, Machine Washable
- Steel Handle with Hang Up Cap for Easy and Convenient Storage

Promo has a Minimum Purchase of 18 units (master cartons of 6). With that you'll receive:

- Freight Pre-paid on Qualifying Order
- $4.95 Promo Cost.....Reg. Cost $6.60 = 25% Savings
- Over 50% Margin @ $9.99 MSRP
- Add qtys of 6 (master carton) to 18 unit Order and receive Discount & Freight Pre-paid

Order Qty: _____

Store Info:




Comprehensive Marketing Inc. 1-800-366-7512. Fax 1-630-916-0735. E-mail customerservice@comprehensive1.com