IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAFTWOOD LUMBER COMPANY, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:17-cv-7024 |
| v. | ) ) | Hon. Charles R. Norgle |
| HORIZON GLOBAL CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Defendant Horizon Global Defendants' Motion to Dismiss for Lack of Standing Pursuant to Rule 12(b)(1) [13] is granted. Defendant Comprehensive Marketing, Inc.'s Motion to Dismiss [16] is granted. Civil case terminated.

## STATEMENT

    Plaintiffs Craftwood Lumber Company, Craftwood II, and Craftwood III (collectively, "Plaintiffs" or "Craftwood") bring this lawsuit on behalf of themselves and a putative class of similarly situated persons for alleged violations of the Telephone Consumer Protection Act ("TCPA"), as codified at 47 U.S.C. § 227, against Defendants Horizon Global Corporation and Comprehensive Marketing, Inc. (collectively, "Defendants"). Plaintiffs originally filed this action in the Circuit Court of Cook County, Illinois and the case was removed to this Court by Defendants. Before the Court are Defendants' motions to dismiss for lack of standing, pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, their motions are granted.

    A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of a complaint. See Fed. R. Civ. P. 12(b)(1). Standing is the "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). Standing contains three elements:

> "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (Scalia, J.) (internal citations and quotations omitted); Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). In their motions Defendants argue, and the Court agrees, that Plaintiffs lacks a concrete injury, and as a result cannot show standing to bring the present lawsuit.

This case was originally filed in the District Court in May of 2017 before it was voluntarily dismissed, following the filing of a motion to dismiss for lack of standing—much like the one now before the Court, and was re-filed in Lake County Circuit Court, Illinois. The case was then removed back to this Court by Defendants.

Plaintiffs are three separate entities that sell hardware in Illinois and California. Over the course of nearly one year, July 2016 through May 2017, Plaintiffs collectively received eleven faxes that they allege violate the Junk Fax Prevention Act of 2005. Plaintiffs allege that the faxes were unsolicited and did not provide the statutorily mandated opt-out language. The faxes, attached to the complaint, states the following at the bottom of the page:

Confidentiality Notice

The information in this facsimile message is privileged and confidential information, intended for the addressee. If you have received this message in error, or if the recipient of this communication does not desire to receive future communications from the sender, The recipient must notify the sender of the same with a return fax to 630-916-0735 or call Toll Free 1-877-325-2526.

Compl. for Violations of the telephone Consumer Protection Act, 47 U.S.C § 227, and FCC regulations [Class Action] and for Declaratory relief; Exhibits [hereinafter, "Compl."], Ex. 1, 3, 4, 5, 6, 7, 8, 9, 10, 11. In their briefings, the Parties provide considerable additional information about their relationship to each-other and the facts surrounding the case.

"In determining whether to dismiss for lack of jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Evers v. Astrue, 536 F.3d 651, 656–57 (7th Cir. 2008) (citing St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 625 (7th Cir. 2007)) (internal quotation omitted). "Indeed, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Pollack v. U.S. Dep't Of Justice, 577 F.3d 736, 745 (7th Cir. 2009) (citing Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 445 (7th Cir. 2009)) (internal quotation omitted).

The Supreme Court, in Spokeo, recognized that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." Spokeo, Inc., 136 S. Ct. at 1549. Here, Plaintiffs rely on that proposition that the violation of a statute itself can be enough to give rise to an injury. However, in Spokeo the Supreme Court recognized two things: "On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, [Plaintiff] cannot satisfy the demands of Article III by alleging a *bare procedural violation*. A violation of one of the [statutes] procedural requirements may result in no harm." Id. at 1550 (discussing the statutory purpose and requirements of the Fair Credit Reporting Act and balancing statutory intent with cognizable injury).

As Plaintiffs point out in the Complaint, the purpose of the Junk Fax Protection Act is to stem the proliferation of facsimile advertising and "junk faxes." In 2005 the Junk Fax Protection Act was amended and it was noted that "[t]he purposes of this legislation are to: Create a limited statutory exception to the current prohibition against the faxing of unsolicited advertisements to

individuals without their 'prior express invitation or permission' by permitting such transmission by senders of commercial faxes to those with whom they have an established business relationship (EBR)." S. REP. 109-76. And, to provide notice of a recipient's ability to opt-out of receiving any future faxes containing unsolicited advertisements. Id.

In their briefs in support, Defendants show that there is an existing business relationship between the Parties. Mem. in Supp. of the Horizon Global Defs.' Mot. to Dismiss for Lack of Standing Pursuant to R. 12(b)(1) [hereinafter, "Horizon Global's Mem."], Ex. B ¶¶ 4-6; Id. at Ex. A(2) (showing order forms establishing Plaintiff's patronage of Defendants). In his Affidavit, Randy Allen, the founder and president of Comprehensive Marketing, Inc. ("CMI"), avers that there has been a business relationship between Craftwood and CMI for a number of years preceding this lawsuit; that Craftwood has communicated and placed orders with CMI via: telephone, e-mail, and fax; and that on approximately twenty occasions CMI personnel have gone to Craftwood's stores in California to perform various marketing functions. Horizon Global's Mem., Ex. B ¶¶ 4-6.

Neither of Plaintiffs' responses takes umbrage with Randy Allen's allegation of a preexisting business relationship. To the contrary, in their response Plaintiffs admit that there was a preexisting business relationship with CMI. Opposition to Comprehensive Marketing, Inc.'s Mot to Dismiss Under Fed. R. Civ. P. 12(b)(1), 3. And, instead argue that there was no prior express permission for Defendants to send fax advertisements.

The Junk Fax Protection Act prohibits sending unsolicited facsimile advertisements unless "the unsolicited advertisement is from a sender with an established business relationship with the recipient[.]" 47 U.S.C. § 227 (C)(i). The sender must also have obtained the recipients' facsimile number voluntarily through the course of business and the advertisement must produce an opt-out notice. Id. at §§ 227(b)(1)(C)(ii) and (iii). The opt-out notice is required to: (i) be clear and conspicuous; (ii) state that the recipient may request not to receive additional facsimile advertisements; (iii) a domestic telephone number and a cost-free mechanism to opt-out; and a litany of other procedural requirements. Id. at §§ 227(b)(1)(D)(i)-(vi).

Because the Junk Fax Prevention Act permits advertising faxes to be sent to entities which have a preexisting business relationship with the sender, the whole of Plaintiffs' claims rest on the Defendants' failure to comply with the opt-out requirements articulated at 47 U.S.C. §§ 227(b)(1)(D)(i)-(vi). Accordingly, Plaintiffs must show some harm resultant from Defendants' bare procedural violation.

Defendants allege that, as a result of the faxes, they were injured via "wrongfully occupied [] facsimile telephone lines;… wasted time required to manage and dispose of Defendants' junk faxes; consumed and wasted [] electricity, paper, and toner; invaded [] privacy rights; and violated [] interests in seclusion." Decl. of David W. Brunjes in Opp. to Horizon Global Defs.' and Comprehensive Marketing, Inc.'s Mot. to Dismiss, CM-ECF No. 39 [hereinafter, "CM-ECF No. 39"] ¶ 2; see also Decl. of Diana B. Newton in Opp. to Horizon Global Defs.' and Comprehensive Marketing, Inc.'s Mot. to Dismiss, CM-ECF No. 40 [hereinafter, "CM-ECF No. 40"] ¶ 3.

As a preliminary matter "A corporation, partnership or unincorporated association has no personal right of privacy. It has therefore no cause of action for any of the four forms of invasion [of privacy]. Restatement (Second) of Torts § 652I cmt. c (1977). Accordingly, Defendants cannot violate Plaintiffs' interest in seclusion. What remains is the hassle Plaintiffs' endured and the resources the expanded in dealing with the "bombardment" of facsimile advertisements.

CM-ECF No. 40 ¶¶ 3, 4 (Plaintiffs represent that they were "pummeled" by a "bombard[ment]" of nine faxes).

Plaintiffs allege the consumption of electricity, paper, and toner is injurious to their business, but this "injury" is not traceable to Defendants' non-compliant opt-out notice. Plaintiffs make no allegations that they were unable to contact Defendants to cease the receipt of facsimile advertisements or that they contacted Defendants and received advertisements afterwards. To the contrary, Plaintiffs acknowledge that they made a phone call to Defendants in regards to the fax advertisements, CM-ECF No. 39 ¶ 9, but there is no allegation that Plaintiffs either demanded Defendants ceased their advertisement campaign of that any faxes were made after said phone call.

The allegation that electricity, paper, and toner were wasted by Defendants' bombardment is unsupported and the type of 'bare procedural violation" that the Supreme Court decried in <u>Spokeo</u>. Because there was an existing business relationship and because Defendants' provided an opt-out notice that apprised Plaintiffs' of the procedure to opt-out, Plaintiffs' have not alleged sufficient facts to let the Court conclude that there has been any cognizable injury. Because Plaintiffs have not alleged any injury beyond a "bare procedural violation," Plaintiffs lack standing to pursue a claim for a violation of 47 U.S.C. § 227. Defendants' motions are granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: April 12, 2018